## Peter J. Schmitt Co., Inc. v. Phar-Mor

*Robert C. Ward,* for plaintiff.
*Norman H. Stark,* for defendant Phar-Mor.
*Paul H. Titus, Daniel J. Shapira,* for defendant Action Industries, Inc.

JIULIANTE, *J.,* April 2, 1984 — This equity action seeking injunctive relief for an alleged violation of a restrictive covenant in a commercial lease is before the court on defendants' joint motion for summary judgment. Based upon the allegations of the

complaint, the answers thereto, and the record developed at the hearing on plaintiff's motion for preliminary injunction held March 6, 1984, as well as a review of applicable law and arguments of learned counsel for the parties, we shall enter judgment against plaintiff, Peter J. Schmitt Co., Inc., and in favor of defendants Phar-Mor and Action Industries, Inc. on plaintiff's claim for injunctive relief, and in favor of plaintiffs and against defendants on defendants' counterclaims.

## I. STATEMENT OF THE CASE: FACTS

This action was instituted February 27, 1984, by the filing of a complaint. Service was effected; defendants filed an answer, new matter and counterclaim on March 5, 1984. A hearing was held on March 6 and 7, 1984; testimony was taken on behalf of both parties. The request for preliminary injunction was denied by order dated March 7, 1984.

The complaint alleges that plaintiff, a lessee of Tenth Street Building Corporation, doing business as Loblaw's Supermarkets, sublet the premises in question, a storeroom located on the southwestern corner of West 12th Street and Pittsburgh Avenue in Millcreek Township, Erie County, Pa., to defendant Action Industries (Action) when plaintiff moved its operations to a nearby storeroom. The sublease agreement between plaintiff and defendant Action contained the following restrictive covenant:

"3(L) The premises shall not be used in whole or in part for the operation of a supermarket or food store."

Action subsequently ceased its operations in the demised premises and sublet to Phar-Mor Discount Drugs. Phar-Mor characterizes itself as a "deep discount drugstore" and sells a wide variety of merchandise, including prescription drugs. Phar-Mor

claims that its prices are substantially below retail. Phar-Mor commenced operations on February 26, 1984, after remodeling the storeroom; the complaint was filed the next day.

The court heard testimony on behalf of plaintiff from Ralph Suscheck, the manager of a nearby Loblaw's store, and Henry Knaus, a Schmitt vice president and the general manager of Schmitt's Loblaw's operations. Defendants presented the testimony of Donald Robinson, a drugstore magnate and purported expert.

The testimony fairly developed the following facts: approximately one-third of Phar-Mor's shelf space is devoted to what plaintiff characterizes as "grocery-type items" including paper products, candy and snacks. The remaining two-thirds of Phar-Mor's shelf space is devoted to pharmaceuticals, over-the-counter drugs, remedies and nostrums, health and beauty aids, and other items, many of which are also sold by Loblaw's. Phar-Mor sells no meats, fish, fresh vegetables, frozen food or refrigerated dairy items.

The evidence established that Loblaw's and Phar-Mor use similar marketing techniques such as store layout, a multiplicity of cash registers, shopping carts, and so on.

## II. ISSUES PRESENTED

At issue in this case is the interpretation and application of the above-noted restrictive covenant. Plaintiff contends that the language must be interpreted to prohibit the sale of any supermarket or food items; defendants contend that the clause restricts the type of operation to be carried on in the demised premises.

## III. DISCUSSION

We note at the outset that summary judgment may only be entered in a clear case, after examining the record in the light most favorable to the non-moving party. This we have done in our recital of facts, supra. It should be noted that our finding that up to one-third of Phar-Mor's shelf space is devoted to food items is based entirely on the testimony of Ralph Suscheck, plaintiff's employee. We find Mr. Suscheck's definition of "grocery items" to be extremely broad, if not blatantly self-serving. It was hotly disputed by defendants (see Exhibit B to joint answer, new matter and counterclaim). Defendants have had no opportunity at this stage of the proceedings to dispute that fact.

Notwithstanding that up to one-third of Phar-Mor's line may constitute "grocery items", we find that Phar-Mor's activity does not constitute "the operation of a supermarket or food store".

We note that restrictive covenants such as the one at hand are not illegal per se, Great A&P Tea Co., Inc. v. Bailey, 421 Pa. 540, 220 A.2d 1 (1966); Cleaver v. Lenhart, 182 Pa. 285 (1897). Such covenants will be enforced if they are reasonable and limited in space, time and scope to the extent required to protect the party for whose benefit the covenant was made. Sun Drug Co., Inc. v. West Penn Realty Co., et al, 439 Pa. 452, 460, 268 A.2d 781 (Cohen, J. concurring and dissenting) (1970) (citing Great A&P Tea Co., supra).

The clause here in issue, however, is vague and ambiguous. The court cannot enlarge a restriction by implication and cannot save the draftsman from any ambiguity he has created, for the restriction must be strictly construed against the one asserting rights under it, since the restriction is in restraint of

free and open competition, as well as a restraint upon land use. Great A&P Tea Co., v. Bailey, 421 Pa. 540, 220 A.2d 1 (1966) (term "adjoining property" held not to apply to after-acquired contiguous property); Jones v. Park Lane Home for Convalescents, 384 Pa. 268, 120 A.2d 535 (1956); but see Sun Drug Co., Inc. v. West Penn Realty Co., 439 Pa. 452, 268 A.2d 781 (1970) (2 decrees enjoining operation of drug store "without pharmacy department" affirmed by equally divided court as to stores with more than 50 percent overlap of product lines, decree enjoining operation of similar store with 41 percent produce overlap reversed).

Plaintiff would have us construe this clause to mean "no occupant of the premises shall sell any items commonly found in a supermarket or food store", which is not what the clause states. In essence, plaintiff seeks the right to dictate which specific articles Phar-Mor may sell, and which they may not. Obviously, if plaintiff were given this power, Phar-Mor would be relegated to the sale of prescription drugs only, for plaintiff seeks to avoid any competition in its sale of a wide and expanding line of merchandise.

The more reasonable construction of this clause "[t]he premises shall not be used in whole or in part for the operation of a supermarket or food store" is that the phrase "in whole or in part" modified the word "premises" (see addendum to lease between Tenth Street and Peter J. Schmitt Co., exhibit "B" to complaint, which relates to subdivision of the premises) and that the phrase "supermarket or food store" applies to the word "operation." Thus, we interpret the clause to restrict the type of operation to be carried on in the demised premises, rather than to restrict or prohibit the sale of specific items.

Thus, we must determine whether defendant Phar-Mor's operation constitutes that of a "supermarket or food store"; the fact that Phar-Mor sells some food items is not dispositive of the issue.

The terms "supermarket" and "food store" are not defined in the lease. We must rely on the common and ordinary meaning of those words, notwithstanding defendants' contention that "parochial" definitions must be eschewed. We note that in the common parlance, "supermarket" denotes an establishment offering for sale at retail not only candy, snacks and "dry groceries" but also fresh meat, fresh produce, frozen foods and dairy products, as well as a full panoply of other items. The clearly established fact that Phar-Mor sells no fresh or perishable items leads us to conclude that its operation may in no way be characterized as a "supermarket."

Similarly, we find that a "food store" is an establishment selling primarily food items, if not the entire gamut of fresh and frozen foods, and which may in addition sell other items for the convenience of its customers. Phar-Mor's operation sells primarily non-food items, such as drugs, remedies, health and beauty aids and housewares. Thus, we cannot characterize Phar-Mor as a "food store." Accordingly, we find no violation of section 3(L) of the sublease between Schmitt and Action.

We would be remiss if we were to ignore the intent and purpose of the restrictive covenant and dismiss the case on an arbitrary definition. Thus, we note that the above interpretation of section 3(L) is made with a full understanding of the commercial reality underlying such agreements. As Justice Roberts stated in his opinion in support of orders in Sun Drug Co., Inc. v. West Penn Realty Co., supra, "[i]n construing these leases, the touchstones of interpretation ought to be the similarity of the businesses

from the point of view of the consumers and the extent to which customary business practice would consider the two operations to be coextensive." 439 Pa. at 456. We cannot be convinced, even with further development of the record, that such an impression of Phar-Mor's operation could be established. We are not convinced that Phar-Mor constitutes a serious threat to the investment of Schmitt in its store across the street. Common sense dictates that no one could realistically attempt to do their marketing at Phar-Mor to the exclusion of a Loblaw-type operation, unless they were to subsist on a diet of snacks and soft drinks. The type of competition Phar-Mor presents to Schmitt is not the type that was evidently contemplated at the time the lease was drafted, and it is the intention of the parties at the time the agreement was entered into that must control interpretation of this lease. Baederwood, Inc. v. Moyer, 370 Pa. 35, 87 A.2d 246 (1952).

Having found no immediate irreparable harm to plaintiff (our ruling of March 7, 1984), a preliminary injunction has been denied. Having found that plaintiff would be unable to establish a violation of sublease clause 3(L), summary judgment will be granted to defendants. We need not address the other issues raised by defendants, except to note that there was a bona fide dispute as to the interpretation of section 3(L) of the sublease, and therefore we find no authority under section 4 of the sublease (exhibit "C" to complaint) to award attorney's fees to Action. Nor do we find that the institution of this claim constituted a malicious, unprivileged attempt to interfere with the sublease between Action and Phar-Mor or a malicious interference with Phar-Mor's right to do business as claimed by Phar-Mor. Thus, no attorney's fees will be awarded.

## ORDER

And now, this April 2, 1984, upon consideration of defendants' joint motion for summary judgment, it is ordered that said motion shall be and is hereby granted. Judgment shall be and is hereby entered in favor of defendants Action Industries, Inc. and Phar-Mor on plaintiff's complaint; judgment shall be and is hereby entered in favor of plaintiff on the counterclaim of Action Industries, Inc. and Phar-Mor. Costs on plaintiff.