**UNITED CORPORATION d/b/a PLAZA EXTRA, Appellant/Plaintiff**

**v.**

**TUTU PARK LIMITED and P.I.D., INC., Appellees/Defendants**

S. Ct. Civ. No. 2010-0083

Supreme Court of the Virgin Islands

September 7, 2011

JOHN K. DEMA, ESQ., The Law Offices of John K. Dema, P.C., St. Croix, USVI, *Attorney for Appellant.*

TRESTON E. MOORE, ESQ., Moore, Dodson & Russell, P.C., St. Thomas, USVI, *Attorney for Appellees.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 7, 2011)

HODGE, C.J. Appellant United Corporation ("United") appeals from an October 12, 2010 Opinion and Order entering summary judgment in favor of Appellees Tutu Park Limited ("Tutu") and P.I.D., Inc., and dismissing all of its claims with prejudice. For the reasons that follow, this Court reverses the Superior Court's grant of summary judgment and re-instates United's complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On July 9, 2001, United filed a verified complaint against Tutu and P.I.D. — a general partner in Tutu[2] — in the Superior Court, which sought damages for breach of contract. The complaint alleged that United and Tutu had entered into a contract on October 29, 1991 in which United had agreed to lease premises at the Tutu Park Shopping Mall in St. Thomas, U.S. Virgin Islands — which is owned and operated by Tutu — in order to operate a supermarket known as Plaza Extra. (J.A. 25-26.) According to the complaint, Tutu had granted United the exclusive right to operate a supermarket at the mall. (J.A. 26.) Although Tutu had entered into a lease with K-Mart — a national retailer which sells food products in some of its stores — in November 1989, United alleged in its complaint that the agreement between Tutu and K-Mart contained a provision prohibiting K-Mart from operating a supermarket at the mall, a provision which United contended had been incorporated into the October 1991 agreement. (J.A. 26-27.) Finally, the complaint alleged that K-Mart began to sell food at its store on or about June 7, 1993, and then expanded its food sales in November 1995 and again in November 2000, which, according to United, transformed K-Mart into a supermarket and resulted in Tutu breaching the October 1991 agreement. (J.A. 27-28.) United attached a copy of the October 1991 agreement to its complaint, as well as a copy of the November 1989 agreement between Tutu and K-Mart.

United filed a motion for partial summary judgment on August 22, 2002, and Tutu filed its opposition and cross-motion for summary judgment on September 16, 2002. Following additional motion practice, on July 7, 2003, the Superior Court entered, *nunc pro tunc* to February 11, 2003, an order (1) deferring consideration of the summary judgment

---

[1] It is important to note that, although the Clerk of the Superior Court is required to prepare certified docket entries that accurately represent what documents were filed during the Superior Court proceedings, the docket entries in this case are very highly incomplete, and numerous documents — including, but not limited to, Tutu's answer, United's motion for partial summary judgment, and Tutu's cross-motion for summary judgment — are not listed as part of the docket even though they are included in the Joint Appendix and addressed in various Superior Court orders. Therefore, given the absence of accurate docket entries, all references to the dates of documents in this opinion are approximate based on the dates provided by the parties.

[2] Since all of United's claims against P.I.D. are based on P.I.D. being a general partner in Tutu, unless otherwise noted all subsequent references to Tutu in this opinion refer to Tutu and P.I.D. collectively.

motions pending a decision by the United States Court of Appeals for the Third Circuit in *Sunshine Supermarket, Inc. et al. v. Kmart Corporation*, a case which involved interpretation of a contract similar to the November 1989 agreement; and (2) directing the parties to submit supplemental authorities on the meaning of the term "supermarket" in the context of the litigation within sixty days, which both parties timely filed.

On October 5, 2004, the Superior Court directed the parties to file an informational motion with respect to the status of the *Sunshine Supermarket* appeal in the Third Circuit. But while United filed its informational response on October 13, 2004 — which advised that the *Sunshine Supermarket* case had settled and that the appeal had been dismissed — the Superior Court did not rule on the pending summary judgment motions. Instead, in June 30, 2005 and June 16, 2006, the Superior Court inquired *sua sponte* as to whether the matter should be referred to arbitration or mediation. After both parties filed status reports in July 2006, the matter lay dormant in the Superior Court for almost three years, when it was re-assigned to a different judge in February 2009. However, after re-assignment the matter again remained dormant for an additional year. On March 16, 2010, the Superior Court held a status conference and, in a March 25, 2010 Order, directed the parties to supplement their prior motions for summary judgment to address any new case law that may have developed during the intervening seven and a half years. Pursuant to the March 25, 2010 Order, Tutu supplemented its cross-motion for summary judgment on March 30, 2010, United supplemented its motion for partial summary judgment on April 13, 2010, and Tutu filed a reply to United's supplemental filing on May 3, 2010. The Superior Court, in an October 12, 2010 Opinion and Order, denied United's motion for partial summary judgment, granted Tutu's motion for summary judgment, and dismissed United's action with prejudice. United timely filed its notice of appeal on November 4, 2010.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The Superior Court had jurisdiction pursuant to section 76 of title 4 of the Virgin Islands Code, while this Court possesses jurisdiction over the October 12, 2010 Opinion and Order, which constitutes a final judgment, pursuant to V.I. CODE ANN. tit. 4 § 32(a) (1997).

"This Court exercises plenary review of a Superior Court's grant of summary judgment." *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (citing *Maduro v. Am. Airlines, Inc.*, S.Ct. Civ. No. 2007-029, 2008 V.I. Supreme LEXIS 24, *7 (V.I. Feb. 28, 2008) (unpublished)). "On review, we apply the same test that the lower court should have utilized." *Id.* "Because summary judgment is a drastic remedy, it should be granted only when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *Id.* (quoting former wording of FED. R. CIV. P. 56(c)). "When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, and we must take the non-moving party's conflicting allegations as true if 'supported by proper proofs.' " *Joseph v. Hess Oil V.I. Corp.*, 54 V.I. 657, 664 (V.I. 2011) (quoting *Williams*, 50 V.I. at 194-95 (V.I. 2008)). "[T]o survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* (internal quotation marks omitted).

## B. The Summary Judgment Award

 "To succeed on a breach of contract claim, a plaintiff must show four elements: (1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 134-35 (V.I. 2009) (quoting *Galt Capital, LLP v. Seykota*, Civ. Nos. 2002-63, 2002-134, 2007 U.S. Dist. LEXIS 53199, at *6 (D.V.I. July 18, 2007) (unpublished)). Ordinarily, when the terms of a contract are unambiguous, the Superior Court treats the issue of the meaning of those terms as a question of law, but if the terms are ambiguous, the issue of the meaning of the terms becomes a question of fact. As this Court has recently explained,

> [T]o decide whether a contract is ambiguous, we do not simply de-termine whether, from our point of view, the language is clear . . . Before making a finding concerning the existence or absence of an ambiguity, we consider the contract language . . . and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include . . . the conduct of the parties that reflects their under-

standing of the contract's meaning. *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993). Nevertheless, a finding that extrinsic evidence renders a contract latently ambiguous will typically defeat a motion for summary judgment and necessitate that the trier of fact resolve the ambiguity in light of the extrinsic evidence. *See CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co.*, [650 F. Supp. 57, 22 V.I. 442, 445] (D.V.I. 1986). Appellate courts, however, have held that, notwithstanding a latent ambiguity, "if the court finds that a contract is ambiguous *and* that the extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to decide" at the summary judgment stage. *In re Columbia Gas System, Inc.*, 50 F.3d 233, 241 (3d Cir. 1995) (emphasis added).

*White v. Spenceley Realty LLC*, 53 V.I. 666, 678-79 (V.I. 2010). Applying this standard, we reverse the Superior Court's October 12, 2010 grant of summary judgment.[3]

---

[3] We note that it is not clear if the Superior Court properly applied the summary judgment standard with respect to each of the two summary judgment motions that were before it. Pursuant to this Court's precedents, when considering United's motion for partial summary judgment, the Superior Court was required to view all the evidence in the light most favorable to Tutu, and, when considering Tutu's cross-motion for summary judgment, it was mandated to view the evidence in the light most favorable to United.

In Part II.A. of the October 12, 2010 Opinion, the Superior Court, in the context of United's motion for partial summary judgment, held that it "cannot grant summary judgment based on a violation of Section 4.01" of the October 1991 agreement because United "neither alleged in its Complaint a violation of this particular provision of its Lease, nor did it make this argument anywhere in its 2002 or 2010 Motions for Summary Judgment." (J.A. 11 (emphasis added).) Likewise, in Part II.B., the Superior Court held that even if United "had properly raised the issue of a violation of Section 4.01, it still would not be entitled to a judgment *in its favor* because Kmart is not a 'food supermarket.' " (J.A. 11 (emphasis added).) Moreover, in Part II.C., the Superior Court found "that even if Paragraph 22 were incorporated, and even if Kmart violated Paragraph 22 ... [United] is not entitled to a *judgment in its favor*." (J.A. 13) (emphasis added).) Finally, in the concluding paragraph, the Superior Court held that "[United] is not entitled to a judgment as a matter of law" because "there is no evidence that Tutu Park breached any promise it made to [United] in Section 4.02," and "[t]herefore, Tutu Park is entitled to summary judgment in its favor." (J.A. 17.)

Given this language in the October 12, 2010 Opinion, it appears that the Superior Court entered summary judgment in favor of Tutu solely because United had failed to demonstrate that it was entitled to summary judgment in its favor. But, even if the Superior Court was correct that United was not entitled to have its motion for partial summary judgment granted, the Superior Court could not grant Tutu's motion for summary judgment without viewing all

## 1. *Construction of Section 4.02 of the October 1991 Agreement*

Pursuant to section 4.01 of the October 1991 agreement, "[United] shall have the exclusive right as set forth in Section 4.02 to operate a food supermarket at the Shopping Center as long as all the Demised Premises are open and are operated as a Supermarket Food type Retail outlet." (J.A. 74.) In its October 12, 2010 Opinion, the Superior Court found, in the context of United's motion for partial summary judgment, that it was not necessary to reach the issue of whether K-Mart operated a supermarket because, even if K-Mart was a supermarket, the restrictive covenant in section 4.02 of the October 1991 agreement between United and Tutu did not apply to K-Mart. Section 4.02 provides, in its entirety, as follows:

> Landlord agrees that during the term of this Lease and as long as the Demised Premises are operated as a Supermarket, neither Landlord nor its successor or assigns will lease any premises in the Shopping Center set forth on EXHIBIT "B" to another food supermarket. This restriction shall not prohibit other tenants from selling the same products as Tenant as long as it is incidental to their normal business nor shall this restriction apply to the K-Mart premises nor to any Tenant of less than 10,000 square feet. K-MART has agreed that they will not operate a supermarket, pursuant to paragraph 22 of their lease with Landlord (which is attached hereto) as long as the supermarket is operated by Florida Supermarket or their successor. Landlord shall obtain an agreement with K-MART that PLAZA EXTRA shall be in-

---

the evidence in the light most favorable to United to determine if a genuine issue of material fact should preclude entering summary judgment in Tutu's favor. Accordingly, the Superior Court, by analyzing all of the issues solely from the perspective of United's motion for partial summary judgment and then entering summary judgment in favor of Tutu without conducting any further analysis, erred by failing to apply the correct legal standard to Tutu's cross-motion for summary judgment.

Nevertheless, as noted above, this Court, on appeal, applies the same test that the Superior Court should have performed. *See Williams*, 50 V.I. at 194. In other words, when reviewing the Superior Court's decision to enter summary judgment in favor of a party, this Court grants the Superior Court no deference. Therefore, rather than vacating the Superior Court's October 12, 2010 Opinion and Order with directions to apply the correct legal standard on remand, this Court may, notwithstanding this error, review the Superior Court's decision to enter summary judgment in favor of Tutu pursuant to the correct legal standard. *See Martin v. Martin*, 54 V.I. 379, 385 (V.I. 2010); *Hodge v. McGowan*, 50 V.I. 296, 310-11 (V.I. 2008).

cluded as a successor of Florida Supermarket for purposes of that paragraph.

(J.A. 74.) Pursuant to paragraph 22 of the November 1989 agreement between K-Mart and Tutu,

> Tenant agrees with Landlord that so long as Florida Super Markets, Inc. d/b/a Sun Supermarkets its affiliates or successors is operating a supermarket or grocery store on the property described in Exhibit "A" Parcel B, Tenant agrees that it will not use the demised premises for the operation of a food supermarket or food department or for the sale of off-premises consumption of groceries, meat, produce, dairy products, baker products or any of these. The foregoing shall not, however, prohibit: (i) the sale by a restaurant operation, lunch counter, deli or fountain of prepared ready to eat food items, either for consumption on or off the premises (ii) the sale by Tenant, its successors and assigns, of candy, cookies and other miscellaneous foods in areas totalling [sic] not more than Five Thousand (5,000) square feet of sales area, exclusive of aisle space. This restriction shall be void if Florida Super Markets Inc. d/b/a Sun Supermarkets its affiliates or successors shall fail to operate a supermarket for a continuous period of one hundred eighty (180) days, except for non operation due to fire and casualty.

(J.A. 44.)

According to United, the Superior Court erred in its analysis because (1) Tutu never disputed at any point in the Superior Court proceedings that the restrictive covenant encompassed K-Mart; and (2) the portion of section 4.02 which excluded K-Mart referred only to the reference to tenants selling products "incidental to their normal business" and not to the restrictive covenant prohibiting Tutu from leasing to another supermarket or K-Mart from operating a supermarket. Tutu, however, contends that the Superior Court interpreted this provision correctly, and states that it did make this argument in its opposition to United's motion for summary judgment and cross-motion for summary judgment.

First, we agree with United that Tutu never argued in its September 16, 2002 cross-motion for summary judgment that no portion of section 4.02 applied to K-Mart. Rather, Tutu only contended that there was no violation of section 4.02 because K-Mart was not actually operating a supermarket. (J.A. 476-79.) Likewise, in the portion of its

710

September 16, 2002 filing which served as an opposition to United's August 22, 2002 motion for partial summary judgment, Tutu also never contested United's claim that section 4.02 prohibited K-Mart from operating a supermarket, but only opposed United's motion on other grounds. (J.A. 487-93.) Therefore, given that both parties had conceded — at least for purposes of summary judgment — that section 4.02 precluded K-Mart from operating a supermarket, the Superior Court erred in reaching this issue *sua sponte* in its October 12, 2010 Opinion without — at an absolute minimum — providing United with an opportunity to be heard with respect to any grounds for summary judgment being raised by the Superior Court *sua sponte. See Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311-12 (9th Cir. 1982) (holding that court may *sua sponte* enter summary judgment against the party who moved for summary judgment, but only if that party has had a fair opportunity to dispute that issue); *Ramsey v. Coughlin*, 94 F.3d 71, 73-74 (2d Cir. 1996) (holding that, though trial court may in some circumstances raise issue of summary judgment *sua sponte*, "[s]ummary judgment should not be granted . . . unless the losing party has been given an opportunity to demonstrate that there are genuine material issues for trial.") (quoting *Hispanics for Fair and Equitable Reapportionment v. Griffin*, 958 F.2d 24, 25 (2d Cir. 1992)).

Nevertheless, because this Court applies on appeal the same test that should have been applied by the Superior Court, and the parties have both addressed the proper interpretation of section 4.02 in their briefs, this Court shall, in the interests of judicial economy, reach this issue on the merits and hold that the Superior Court misinterpreted section 4.02. The first sentence of section 4.02 provides that "neither Landlord nor its successor or assigns *will* lease any premises in the Shopping Center . . . to another food supermarket." (J.A. 74 (emphasis added)). Therefore, the first sentence of section 4.02 — by its own unambiguous terms — appears not to apply to leases that were already effectuated, such as the lease between K-Mart and Tutu which was signed in November 1989. Thus, if the first sentence is read to refer only to future leases, the meaning of the portion of the second sentence providing that "nor shall this restriction apply to the K-Mart premises" becomes readily apparent, in that it simply confirms that the first sentence of section 4.02 did not purport to override the agreement between Tutu and K-Mart, which had been entered into prior to the October 1991 agreement and contained its own terms with

711

respect to what products K-Mart was permitted to sell. Importantly, this interpretation of the first sentence also places the third and fourth sentences into context, since the third sentence expressly invokes paragraph 22 of the November 1989 K-Mart agreement, and the fourth sentence provides that Tutu will ensure that United's Plaza Extra store "be included as a successor of Florida Supermarket for purposes of that paragraph." In other words, with respect to K-Mart, section 4.02 (1) confirms that the portion of paragraph 22 of the November 1989 agreement that relates to whether K-Mart may operate a supermarket remains in effect;[4] and (2) requires Tutu to take whatever steps necessary to ensure that Plaza Extra be a successor of Florida Supermarket under the November 1989 agreement, which would have the effect of continuing the prohibition against K-Mart operating a supermarket. Significantly, in its September 16, 2002 cross-motion for summary judgment, Tutu took this exact same position, and expressly conceded that the portion of paragraph 22 providing that K-Mart will not operate a supermarket was incorporated into section 4.02, even though it contended that the other portions of paragraph 22 were not incorporated.[5] (J.A. 479.) Consequently, the Superior Court erred both by reaching this issue, and by holding that there is no restrictive covenant in effect that applies to K-Mart.

### 2. *Tutu Possesses a Duty to Enforce Section 4.02 Against K-Mart*

The Superior Court, as an alternate ground for denying United's motion for partial summary judgment and granting Tutu's cross-motion for summary judgment, held that even if the pertinent portion of paragraph 22 of the November 1989 agreement was incorporated into the

---

[4] We note that, although section 4.02 provides that "K-MART has agreed that they will not operate a *supermarket,* pursuant to paragraph 22 of their lease with Landlord . . . as long as the *supermarket* is operated by Florida Supermarket or their successor," (J.A. 74 (emphases added)), paragraph 22 provides that "Tenant agrees that it will not use the demised premises for the operation of a *food supermarket* or food department," and that "[t]his restriction shall be void if Florida Super Markets Inc. d/b/a Sun Supermarkets its affiliates or successors shall fail to operate a *supermarket* for a continuous period of one hundred eighty (180) days. . . ." (J.A. 44 (emphases added).) However, because it is not necessary to our decision, this Court does not address the significance — if any — in the alternating use of the terms "supermarket" and "food supermarket" in paragraph 22.

[5] Given that our ultimate holding that Tutu is not entitled to summary judgment is not dependent on whether all or part of paragraph 22 was incorporated through section 4.02, this Court declines to resolve this issue as part of this appeal.

October 1991 agreement, United could not be entitled to any relief because section 4.02 provided that "K-MART has agreed that they will not operate a supermarket, pursuant to paragraph 22 of their lease" and did not include any provision mandating that Tutu enforce paragraph 22 against K-Mart on United's behalf. In other words, the Superior Court found that "[s]ection 4.02 would reflect only promises by Kmart to Tutu Park, and not by Tutu Park to Plaza Extra," and thus "[b]ecause the Paragraph does not contain promises by Tutu Park to Plaza Extra, Plaza Extra has no claim against Tutu Park for breach of contract even if Kmart violated Paragraph 22." (J.A. 14.)

█ Again, we note that Tutu, at no point in the Superior Court proceedings, ever contended that it did not owe the requisite duty to United, and thus the Superior Court should not have reached this issue *sua sponte* without providing United with a full and fair opportunity to address the issue. *See Cool Fuel*, 685 F.2d at 311-12. Nevertheless, we find that the Superior Court also erred on the merits because it viewed section 4.02 in isolation rather than in the context of the entire agreement. The first page of the October 1991 agreement expressly identifies United and Tutu as the parties to the agreement and provides that they "desire to enter into this Lease on the terms and conditions herein set forth." (J.A. 58.) Importantly, section 14.01 of the October 1991 agreement expressly provides — in its entirety — that "[e]very term, condition, agreement or provision contained in this Lease shall be deemed to be also a covenant," (J.A. 95), which, given that United and Tutu are the only parties to the October 1991 agreement, is sufficient to make the entirety of section 4.02 enforceable without the need for any additional language stating that section 4.02 binds Tutu. *See Cedar Cove Homeowners·Ass'n, Inc. v. DiPietro*, 368 S.C. 254, 628 S.E.2d 284, 291 (2006) ("The word 'covenant' means to enter into a formal agreement, to bind oneself in contract, and to make a stipulation.") (quoting 20 AM. JUR. 2D *Covenants, Conditions, and Restrictions* § 1.1)). Moreover, although the Superior Court found that "[t]he 'Kmart has agreed' language is more appropriately characterized as background language, rather than legally operative language creating [a]n obligation on Tutu's behalf," (J.A. 15 n.6), section 4.01 expressly provides that "[United] shall have the exclusive right as set forth in Section 4.02 to operate a food supermarket at the Shopping Center," (J.A. 74), and thus would create a legal obligation under the October 1991 agreement even if the language in section 4.02, when read

in conjunction with section 14.01, would have otherwise been insufficient to do so.[6]

██ In addition, to the extent the pertinent language in the October 1991 agreement could be subject to a different interpretation, the uncontradicted deposition testimony of both United and Tutu's corporate representatives with respect to their actions after the October 1991 agreement was signed conclusively established that — notwithstanding any ambiguity in the text of section 4.02 — both entities believed the agreement imposed a duty on Tutu to enforce section 4.02 on United's behalf against K-Mart.[7] In his deposition, Fahti Yusuf — a principal of United — testified that, as early as 1994, he complained to William Lawrence Mahaffey — Tutu's corporate representative — about the products K-Mart was selling at its store, that he believed that

---

[6] In its October 12, 2010 Opinion, the Superior Court held that section 4.01 "may well give rise to an implied promise by Tutu Park to prevent or stop another business from operating a supermarket," but that United "neither alleged in its Complaint a violation of this particular provision of its Lease, nor did it make this argument anywhere in its 2002 or 2010 Motions for Summary Judgment." (J.A. 11.) However, it is not clear why United would have had to specifically cite to section 4.01, given that the pertinent provision of section 4.01 simply invokes section 4.02, which United did clearly raise in its motion for partial summary judgment. Moreover, as noted above, section 14.01 would have rendered the provisions of section 4.02 a covenant between Tutu and United. In addition, at no point did Tutu argue (1) that it did not possess an obligation to enforce section 4.02 on behalf of United in the event K-Mart violated the provisions of paragraph 22 that had been incorporated through section 4.02; or (2) that United's complaint was ambiguous with respect to what provision of the October 1991 agreement it sought to enforce, and the Superior Court cited to no authority for the proposition that it was empowered to *sua sponte* raise these arguments on behalf of Tutu when Tutu had sought summary judgment on other grounds. On the contrary, even if United's complaint only selectively referenced portions of the October 1991 agreement, in its answer Tutu expressly stated that "the subject agreement cannot be selectively referenced, must be read in its entirety and as a whole to determine the full and complete rights of and between those who are party to the referenced agreement," (J.A. 157), and reiterated the need for the Superior Court to read the entire contract even in the specific context of section 4.02. (J.A. 157-58), thus directing that the Superior Court consider the entire agreement in order to determine the parties' rights.

[7] As Tutu correctly noted in its September 16, 2002 cross-motion for summary judgment, some courts have held that "where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject." (J.A. 484 (quoting *Gianni v. R. Russell & Co.*, 281 Pa. 320, 126 A. 791, 792 (1924).) However, as this Court has recently held, courts may consider evidence of how the parties have acted *after* a contract has been signed in order to determine what meaning the parties intended to give to its written terms. *White*, 53 V.I. at 678.

"Mr. Mahaffey is supposed to protect me," (J.A. 221), and that he also repeatedly complained to Larry Nelson and John Foster — two other Tutu representatives — after K-Mart remodeled its store in November 1995, with Foster telling him that he is "fully covered" pursuant to the October 1991 agreement. (J.A. 222-26.) Importantly, during his deposition Mahaffey testified that K-Mart had assured Tutu that its food product line was not violating Tutu's agreement with United, (J.A. 197), from which a trier of fact viewing the evidence in the light most favorable to United could infer that Tutu believed that it possessed a duty to United to ensure that K-Mart did not operate a supermarket. But even more significantly, Mahaffey also expressly stated that Tutu believed that it had a contractual obligation to enforce paragraph 22 against K-Mart on United's behalf pursuant to the October 1991 agreement:

> We don't have to enforce every one of the provisions in paragraph 22. We're not required to. The only person that we've ever made a promise to with regard to those would be Mr. Yusuf through Plaza Extra and that was to prevent it from becoming a supermarket. . . . If I choose to do something under 22, I only have to be careful of the exclusion I gave Plaza Extra and that is there be no supermarket and there is no supermarket. And I don't think there will be a supermarket, so that's — that's why I'm a little troubled with this.

(J.A. 205-06.) Thus, we conclude that the Superior Court not only erred in reaching this issue *sua sponte*, but erred on the merits when it held that section 4.02 of the October 1991 agreement was not binding on Tutu, since both the plain language of sections 4.02 and 14.01, as well as the undisputed extrinsic evidence, established that Tutu possessed a duty on behalf of United to enforce the terms of section 4.02 by ensuring that K-Mart did not operate a supermarket in contravention to paragraph 22 of its lease with Tutu.[8]

---

[8] Because the plain language of sections 4.02 and 14.01 appear to bind Tutu to enforce the terms of section 4.02, we decline to address United's argument that various provisions of the Restatement (Second) of Property: Landlord and Tenant and the Restatement (Second) of Contracts authorize a tenant to file suit against a landlord who breaches a non-compete promise in a lease.

### 3. The Meaning of "Supermarket" in the Context of this Case is a Question of Fact for the Jury

Finally, the Superior Court, relying on several cases discussing the meaning of "supermarket" that Tutu had cited in its 2010 supplemental brief,[9] found that K-Mart did not operate a supermarket. In reaching this decision, the Superior Court declined to consider a report from Richard W. Moore — an economist retained by United as an expert — with respect to the industry definition of "supermarket" because, although it was signed and submitted in response to the Superior Court's July 7, 2003 Order, it was not sworn or based on personal knowledge. According to United, the Superior Court erred by (1) *sua sponte* excluding Moore's report in the absence of any objection from Tutu to its consideration; and (2) weighing the evidence and making factual findings that were not supported by evidence in the record. Tutu, however, contends that the Superior Court acted appropriately and, even if Moore's report had been considered, the authorities cited by Moore support the Superior Court's holding that K-Mart is not a supermarket. However, it is not necessary for this Court to determine if the Superior Court erred when it *sua sponte* excluded the Moore report, for even if the Superior Court could have properly excluded that document, it should not have resolved the question of whether K-Mart is a "supermarket" at the summary judgment stage.

For purposes of section 4.02 of the October 1991 agreement, "supermarket" is an ambiguous term. Importantly, "supermarket" is not defined in the October 1991 agreement and the three cases relied upon by the Superior Court and Tutu in its 2010 supplemental brief recognize that there are at least two different "industry" definitions of the term "supermarket," with what one of the cases identified as the "dictionary" definition of "supermarket" being different from both of those industry definitions.[10] Nevertheless, despite this clear dispute about both the

---

[9] *In re Manyfoods, Inc.*, No. 03-27989, 2009 WL 2886312 (Bkrtcy. D.N.J. Aug. 17, 2009); *Slawsby v. Cifrino*, No. 031515BLS, 2003 Mass. Super. LEXIS 186 (Mass. Super. Ct. June 13, 2003); *Peter J. Schmitt, Co. v. Phar-Mor*, 31 Pa. D. & C.3d 394 (Pa. Com. Pl. 1984).

[10] The *Slawsby* court observed that the industry definition of supermarket is "[a] self-service retail food store, with annual sales of $2 million or more, which contains basic departments offering groceries, meat, fish, produce, dairy products and frozen foods." 2003 Mass. Super. LEXIS 186, at *15. However, the *Manyfields* court relied on expert testimony to find that a supermarket is "a format offering a full line of groceries, meat and produce, which offers a

meaning of the term and whether K-Mart operated a supermarket,[11] the Superior Court found that K-Mart did not qualify as a supermarket because (1) "Kmart does not offer fish products or produce, and it does not have a 'very large rice and grains section;' " (2) "[i]t does not offer any meat products other than pre-packaged cold cuts;" (3) "its food sales are incidental to its full product line;" (4) "Kmart does not have a 'full line' of groceries, meat or produce but, rather, a limited selection of those categories" which "are not sold 'fresh;'" and (5) "Kmart does not have a service deli or a bakery." (J.A. 12-13.) In other words, it appears the Superior Court held that K-Mart is not a supermarket notwithstanding this ambiguity because it believed that K-Mart could not qualify as a supermarket under any of the three definitions Tutu cited in its 2010 supplemental brief.

■■ The Superior Court, however, failed to recognize that the three cases cited in Tutu's 2010 supplemental filing were not the only authorities on the meaning of "supermarket" that Tutu had made part of the record. In its initial September 16, 2002 motion, Tutu noted that the reference to 10,000 square feet in the sentence "nor shall this restriction apply to the K-Mart premises nor to any Tenant of less than 10,000 square feet" in section 4.02 "may be used in defining 'supermarket' to the extent required" because "[s]ince (food) supermarket is not defined herein by the particular products it sells, nor can it since all tenants can sell the same products, it must be defined by size as a default." (J.A. 478.) However, in its 2003 supplemental filing, Tutu provided the Superior Court with four authorities that provided four additional definitions of "supermarket,"[12]

---

service deli and frequently a bakery." 2009 WL 2886312, at *9. Moreover, in *Schmitt*, the court found that "in the common parlance, 'supermarket' denotes an establishment offering the sale at retail not only candy, snacks and 'dry groceries' but also fresh meat, fresh produce, frozen foods and dairy products, as well as a full panoply of other items." 31 Pa. D. & C.3d at 399.

[11] United accompanied its motion for partial summary judgment with an extensive list of numerous food products sold by K-Mart. (J.A. 130-54.) In their respective summary judgment motions, the parties disputed whether these products were sufficient to qualify K-Mart as a "supermarket," as opposed to a "food department" or a store that sells some food products.

[12] The very first authority Tutu included in its 2003 filing — *Webster's New World Dictionary* — defines "supermarket" as "a large, self-service retail food store or market, often one of a chain," (J.A. 635), without making any reference to a specific size of store, types of food products sold, freshness of products, or gross or net profits or revenue. Similarly, the second

without (1) taking a position as to which of the five definitions the Superior Court should adopt; or (2) pointing to any evidence in the record demonstrating that K-Mart could not qualify as a supermarket under the four new definitions proposed by Tutu.[13] Likewise, Tutu's 2010 supplemental filing again proposed three additional definitions — for a total of eight definitions proposed by Tutu alone — while still not taking any position as to which definition was controlling for purposes of the October 1991 agreement. Moreover, although Tutu did, in its 2010 filing, argue that K-Mart did not qualify as a supermarket under the three definitions set forth in the three cases it cited in that filing, it still did not make any argument — let alone cite to any evidence in the record — with respect to why K-Mart would not qualify as a supermarket under the

---

authority Tutu directed the Superior Court to consider — a definition authored by William H. Bolen, Ph.D., the Director of Retailing Studies at Georgia Southern University — defines "supermarket" as "a large store that sells food and various other products," stated that "[s]upermarkets differ from other grocery stores chiefly in their volume of sales" in that "[a] supermarket sells at least $2 million worth of goods each year," and — with respect to the types of products sold — simply provided that they "sell a variety of food products, including canned goods, dairy products, and frozen foods," (J.A. 636), without requiring that products be sold fresh, that any specific type of product be sold, or the presence of a bakery or deli. Moreover, Professor Bolen's definition also stated that "many [supermarkets] also stock auto supplies, cleaning products, cooking utensils, greeting cards, and other nonfood items," and that "[s]ome also have banking and post office facilities and offer such services as menu-planning and baby-sitting," (J.A. 636), implying that a store could qualify as a "supermarket" even if it generates substantial revenue from selling other goods and services. The other two authorities Tutu included in its 2003 supplemental filing are "the remarks of (then) [Federal Trade Commission] Commissioner Christine A. Varney from her appearance before the Food Marketing Industry in Seattle, Washington, June 6, 1995," and a "definition contained in [a] reprint of an FTC Proposed Consent Decree in response to a Complaint before its Administrative jurisdiction." (J.A. 633-34.)

[13] It is worth noting that, although Tutu submitted its 2003 filing in response to the Superior Court's July 7, 2003 Order, that order did not direct Tutu to abandon its prior definition of "supermarket," but only to provide it with additional authorities with respect to the term's meaning in the context of the litigation. Importantly, although Tutu technically met its initial burden on this issue in its original September 16, 2002 cross-motion for summary judgment, that document only devoted two sentences to the definition of "supermarket," at least one of which contained language — "*may* be used in defining 'supermarket' to the extent required" — that could possibly be interpreted as not taking an actual position on the issue. (J.A. 478 (emphasis added).) Moreover, even if the Superior Court's July 7, 2003 Order could be construed as a rejection of Tutu's original definition of "supermarket," it would not have excused Tutu's failure to (1) take a position as to which of the four new proposed definitions it believed represented the correct definition for purposes of the October 1991 agreement; or (2) point to evidence in the record indicating that no genuine issue of material fact existed with respect to whether K-Mart qualified as a supermarket under those definitions.

authorities it introduced into the record through its 2003 filings. In other words, Tutu failed to point to any evidence that indicated an absence of a genuine issue of material fact but — on the contrary — actually pointed to evidence that demonstrated the existence of an important factual issue: the meaning of "supermarket."[14]

As this Court has previously held, when the party moving for summary judgment has introduced conflicting pieces of evidence into the record, the Superior Court cannot independently weigh the evidence to resolve the conflict, but must accept as true the evidence that is most favorable to the non-moving party. *See Sealey-Christian v. Sunny Isle Shopping Center, Inc.*, 52 V.I. 410, 422 (V.I. 2009) (holding that Superior Court erred in making finding, at summary judgment stage, as to how often defendant had inspected door when one of defendant's agents testified in deposition that door was inspected weekly while another agent gave contradictory testimony that door was inspected daily). Although the Superior Court ordered the parties to file supplemental briefs in 2010, the authorities relied upon in the supplemental filings did not have the effect of erasing all the documents the parties had made a part of the record in their 2002 and 2003 filings.[15] Therefore, although seven and a half years had lapsed since the parties had filed their initial summary judgment motions, the Superior Court continued to possess an obligation to consider all prior evidence, without granting any evidence submitted in

---

[14] It is also important to emphasize — as Tutu did in its September 16, 2002 cross-motion for summary judgment — that "[w]hen [a] [c]ourt interprets [a] contract, its task is not to reveal the subjective intentions of the parties, but what their words would mean in the mouth of a normal speaker of English, *using them in the circumstances in which they were used.*" (J.A. 480 (citing *Halderman v. Pennhurst State Sch. and Hosp.*, 901 F.2d 311, 319 (3d Cir. 1990) (emphasis added).) Thus, the Superior Court should also have considered Yusuf's deposition testimony that he entered into the October 1991 agreement with the understanding that K-Mart would only be permitted to sell candies, cookies, and other miscellaneous foods in areas totaling not more than 5,000 square feet exclusive of aisle space. (J.A. 231.)

[15] Significantly, although Tutu captioned its 2010 supplemental brief as "Defendants' Motion for Summary Judgment," the first sentence of this document states that the purpose of the filing is "to *supplement* the Cross-Motion for Summary Judgment filed on September 18 [sic], 2002." (J.A. 677 (emphasis added).) Likewise, United stated in its 2010 supplemental brief that it "will not repeat the authorities and case law previously presented by United to the Court (so as to avoid duplication and repetition), but incorporates them by reference herein." (J.A. 699.) Accordingly, neither of the 2010 supplemental briefs could be construed as withdrawing any arguments or removing any previously-submitted documents from the record.

2010 any greater weight solely because the documents were filed more recently.

 Under these circumstances, the term "supermarket" in the October 1991 agreement is ambiguous. Accordingly, by providing the Superior Court with eight different definitions of the term, but only pointing to evidence that K-Mart is not a supermarket with respect to some of those definitions, Tutu failed to demonstrate that it was entitled to a grant of summary judgment. Therefore, because a genuine issue of material fact exists as to whether K-Mart operated a "supermarket," we reverse the Superior Court's October 12, 2010 Opinion and Order and remand this matter to the Superior Court for proceedings consistent with this opinion.

## III. CONCLUSION

The Superior Court erred when it *sua sponte* held that no restrictive covenant applies to K-Mart because (1) neither party disputed in its summary judgment motions that section 4.02 precluded K-Mart from operating a supermarket, and (2) to the extent it could reach the issue, its holding was based on a misinterpretation of the plain text of section 4.02 of the October 1991 agreement. Additionally, the Superior Court also erred when it held that section 4.02 was not binding on Tutu, since both the plain language of section 4.02, as well as the undisputed extrinsic evidence, established that Tutu possessed a duty on behalf of United to enforce the terms of section 4.02 by ensuring that K-Mart did not operate a supermarket. Finally, the Superior Court erred when it found, at the summary judgment stage, that K-Mart does not operate a supermarket because in the context of the October 1991 agreement, the term "supermarket" is ambiguous and, depending on which definition is used, a trier of fact could reasonably find that K-Mart operates a supermarket. Accordingly, we reverse the Superior Court's October 12, 2010 Opinion and Order, re-instate United's complaint, and remand the matter to the Superior Court.[16]

---

[16] Since the Superior Court erred when it granted Tutu's cross-motion for summary judgment and dismissed United's claim for breach of contract, this Court declines to decide, in the first instance, United's claim that its complaint alleged that Tutu owed, and later breached, a duty of good faith and fair dealing. Likewise, we also decline to address in the first instance the other grounds in favor of summary judgment raised in Tutu's September 16, 2002 cross-motion for summary judgment but not addressed in the Superior Court's October 12, 2010

Opinion, such as its claim that P.I.D. should be dismissed from the litigation because it is not a real party in interest.