**AUBREY WALTERS, Appellant/Plaintiff**

**v.**

**ELVIRA WALTERS, Appellee/Defendant**

S. Ct. Civil No. 2010-0040

Supreme Court of the Virgin Islands

April 28, 2014

769

770

AUBREY WALTERS, St. John, USVI, *Pro se.*[1]

ELVIRA WALTERS, St. John, USVI, *Pro se.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*. SWAN

## OPINION OF THE COURT

(April 28, 2014)

HODGE, *Chief Justice*. Appellant Aubrey Walters[2] appeals from a May 7, 2010 Order of the Superior Court dismissing his case for "insufficiency of evidence." He alleges that the trial court erred by denying his motion for summary judgment in his action for debt against his former wife, Elvira Walters, and that the court's actions were motivated by the trial judge's bias against him. Since Aubrey failed to introduce sufficient evidence at the summary judgment stage, and because there is no evidence the trial judge harbored any bias against him, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Aubrey and Elvira were married in 1993. At some point during their marriage, it appears that Elvira entered into a contract with Dina Alford under which she would make installment payments towards the purchase of Parcel No. 10-6D-1 Estate Glucksburg, 22 Cruz Bay Quarter, St. John, Virgin Islands. Although Aubrey apparently gave Elvira ten payments of $300 each towards the purchase, Aubrey avoided placing his name on the purchase contract because of unspecified "tax problems."[3] Aubrey claimed to have "performed labor and supplied material for the construction of a residence" on that property in 2001, and that the value of the work was approximately $25,000. (J.A. 4.) He further alleged that

---

[1] Although Kenth W. Rogers drafted Appellant's Brief and otherwise served as counsel to Aubrey Walters, this Court ordered his disbarment after this matter was submitted for consideration but before issuance of this Opinion. *In re Disbarment of Rogers*, 60 V.I. 295, 300 (V.I. 2013).

[2] Because some of the individuals involved in this case possess the same last name, we refer to them by their first names to minimize confusion.

[3] While Aubrey indicated that his name was not placed on the contract because of his purported tax problems, he also stated in his affidavit in support of his summary judgment motion that he was separated from Elvira at the time of the contract.

he performed the work because Elvira had asserted that she was making payments on the property pursuant to a land purchase contract, and so Aubrey believed that Elvira owned the property. On May 21, 2002, Elvira "transferred" her interest in the property to her son, Garvin A. Hodge.[4] Aubrey contends that he "made numerous demands for payment of the money owed" but that Elvira refused to pay him. (J.A. 5.) He further alleged that between February 1 and February 10, 2005, Elvira stole checks and forged his signature, obtaining $3,931.67, which she has never repaid despite demand.

On May 4, 2006, Aubrey sued Elvira in the Civil Division of the Superior Court, and the matter was assigned to the Honorable Brenda J. Hollar. After Aubrey filed his complaint, nothing further occurred until November 15, 2006, when he filed a summary judgment motion. During this time, Elvira and Aubrey were also parties to a divorce action before the Family Division of the Superior Court, which was assigned to the Honorable Audrey L. Thomas.

Judge Hollar held a hearing in the debt action on December 1, 2006, and directed Elvira — who appeared *pro se* — to respond to the summary judgment motion by January 8, 2007. When Elvira failed to file an opposition, Aubrey filed a motion on February 2, 2007, to have the motion deemed conceded. Judge Hollar scheduled another hearing on the summary judgment motion for March 18, 2010, where she heard arguments. Although Aubrey was not present, his counsel attended the hearing and argued the summary judgment motion, stating that Aubrey performed work on the house, and that he was requesting $23,400 as the value of his work. When Aubrey's counsel noted that the house was not owned by Elvira, but instead by her son, Judge Hollar asked why Aubrey had filed an action against Elvira. Counsel responded that "[i]f someone request you to do work, then that person has a contract with you." (J.A. 27.) However, Aubrey's counsel could not point to evidence as to whether Aubrey was living at the house after he completed its construction, and

---

[4] Aubrey's summary judgment motion indicates that Hodge purchased the property directly from Dina Alford. Consequently, it appears that Aubrey alleges that Elvira transferred whatever interest she might have had in the property as a result of the installment plan to her son.

conceded that "[t]here is no agreement that she would pay him."[5] (J.A. 32.) Judge Hollar then denied the summary judgment motion because she found that there were questions of fact "as to whether a [c]ontract was consummated, whether there was ever a meeting of the minds and what was the meeting[] of the mind[s] and when." (J.A. 33.) Counsel argued that because Elvira had never filed a response to the motion, the facts ought to have been deemed conceded. Before the hearing concluded, Judge Hollar advised Elvira and Aubrey's counsel that trial would occur on May 5, 2010.

Approximately 10 minutes before the scheduled start of trial on May 5, 2010, Aubrey filed a "Motion for Disqualification of Judge Brenda Hollar" with the Superior Court Clerk's Office. In his motion, Aubrey alleged that Judge Hollar and Judge Thomas were colluding together against Aubrey, based on their common religious activities, and that Judge Thomas had refused to set a trial date in the divorce action.

Because Aubrey's counsel filed the document less than 30 minutes before scheduled start of trial and failed to orally notify Judge Hollar of its filing, Judge Hollar did not rule on the motion — apparently unaware that it had even been filed — and proceeded with trial as scheduled. Although Elvira did not appear, Judge Hollar elected to proceed in her absence. Aubrey testified at the trial, and explained that he was suing Elvira for debt owed for his work on the Glucksberg property, which included clearing trees and brush, and constructing a home. He stated that he learned in "2006, 2007, somewhere around there" that the property was actually owned by Elvira's son. (J.A. 18.) However, he testified that he never asked Elvira to pay him for the work that he did.

After Aubrey concluded his testimony, and after his counsel's summation, Judge Hollar found that Aubrey and Elvira were married at the time of the construction; that he never asked her to pay for the work; that he did not know the value of the work performed; that he did not testify as to the location of the home nor did he provide any documentary evidence. From this, the court concluded that "there's insufficient evidence to establish that the debt is owed." (J.A. 20-21.) Consequently,

---

[5] However, soon thereafter counsel stated that "[y]ou know, an assumption or agreement, the point is, this is someone who is married to someone who did work based on an oral agreement." (J.A. 33.)

Judge Hollar orally dismissed Aubrey's complaint, and later memorialized that decision in a May 7, 2010 Order.

On June 4, 2010, Aubrey filed a timely notice of appeal. Nevertheless, four months later, on September 9, 2010, Aubrey again moved for Judge Hollar's disqualification. In this motion, Aubrey alleged that Judge Hollar had "pervasive bias," and that "[i]t is obvious that Judge Hollar and Judge Thomas . . . are acting in concert," because they were members of the same church. Consequently, Aubrey alleged, Judge Hollar's alleged bias against Aubrey must be imputed to Judge Thomas, who "willfully refused to set a trial date based upon ex-parte communications between the court and Elvira Walters." (J.A. 47.) Judge Hollar denied the motion as moot, noting that the action was already on appeal.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). The Superior Court's May 7, 2010 Order dismissing the case with prejudice ended the litigation on the merits. Accordingly, it is a final order, and we therefore possess jurisdiction over this appeal. *See, e.g., Pichierri v. Crowley*, 59 V.I. 973, 977 (V.I. 2013) (order dismissing case with prejudice is a final order for purposes of 4 V.I.C. 32(a)).

## III. DISCUSSION

■ In his appellate brief, Aubrey only challenges the denial of his summary judgment and recusal motions.[6] We address each claim in turn.

### A. The Summary Judgment Motion

We exercise plenary review over a decision granting or denying summary judgment. *Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455, 468 (V.I. 2013); *United Corp. v. Tutu Park Ltd.*, 55 V.I. 702, 707 (V.I. 2011);

---

[6] In his notice of appeal, Aubrey indicated that he intended to appeal the May 7, 2010 Order dismissing his complaint with prejudice after trial. Because his brief contains no legal argument with respect to the May 7, 2010 Order or a sufficient objection to the oral ruling that preceded it, Aubrey has waived his right to have that decision reviewed by this Court. *See* V.I.S.CT.R. 22(m) (issues not objected to before the Superior Court, not briefed, or only briefed in a perfunctory manner, are waived).

*Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (citing *Maduro v. Am. Airlines, Inc.*, S. Ct. Civ. No. 2007-0029, 2008 V.I. Supreme LEXIS 24, \*7 (V.I. Feb. 28, 2008) (unpublished)). "On review, we apply the same test that the lower court should have utilized." *United Corp.*, 55 V.I. at 707; *see also Pollara*, 58 V.I. at 468. "Because summary judgment is a drastic remedy, it should be granted only when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *United Corp.*, 55 V.I. at 707 (quoting former wording of FED. R. CIV. P. 56(c)) (citations omitted); *see also Anthony v. FirstBank V.I.*, 58 V.I. 224, 228-29 (V.I. 2013).

■ Before we consider the Superior Court's summary judgment decision, we must determine what causes of action Aubrey actually asserted. Although Aubrey failed to identify any substantive theory of liability in his complaint, his summary judgment motion argued that Elvira is liable to him in quantum meruit, and owes him restitution under a theory of fraudulent conveyance. In light of Aubrey's judicial admissions, including his counsel's statement that no actual agreement existed between Aubrey and Elvira,[7] as well as the Superior Court adjudicating the motion as if Aubrey had only raised quantum meruit and fraudulent conveyance claims, we construe Aubrey's complaint as only asserting these two causes of action.[8]

---

[7] Although "unsworn representations of an attorney are not evidence," *Henry v. Dennery*, 55 V.I. 986, 994 (V.I. 2011), an attorney's client may nevertheless be bound by such statements under the doctrines of judicial admissions and judicial estoppel. *See Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 133 (V.I. 2009) (recognizing judicial admissions doctrine in the Virgin Islands), *overruled in part on other grounds by Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (V.I. 2012); *see also Sobratti v. Tropical Shipping & Constr. Co.*, 267 F. Supp. 2d 455, 463 (D.V.I. 2003) ("Hence, a party is precluded from retreating from a factual claim, which he affirmatively asserted in support of his cause of action, simply to avoid summary judgment.") (collecting cases).

[8] As noted earlier, Aubrey's complaint contained allegations that Elvira stole several checks from Aubrey, forged his signature, and obtained funds from his bank account without authorization. However, since Aubrey did not seek summary judgment for any cause of action even remotely related to this purported theft, the Superior Court correctly declined to determine whether summary judgment should have been granted or denied *sua sponte. United Corp.*, 55 V.I. at 711.

## 1. Quantum Meruit

■ A cause of action for quantum meruit, also known as unjust enrichment, will ordinarily lie in a case where the defendant "receive[s] something of value to which he is not entitled and which he should restore" to the plaintiff. *Maso v. Morales*, 57 V.I. 627, 635 n.9 (V.I. 2012) (quoting *Smith v. Whitener*, 42 Ark. App. 225, 856 S.W.2d 328, 329 (1993)). Previously, this Court held that to prevail on a claim for unjust enrichment, the plaintiff bears the burden of proving (1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, and (3) "that the circumstances were such that in equity or good conscience [the defendant] should return the money or property to [the plaintiff]." *Martin v. Martin*, 54 V.I. 379, 394 (V.I. 2010) (citing *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 460, 35 V.I. 356 (D.V.I. 1997)). However, this Court summarily adopted those elements of unjust enrichment by citing a single District Court of the Virgin Islands case, without determining whether that rule represents the sounder rule for the Virgin Islands. *See Gov't of the V.I. v. Connor*, 60 V.I. 599, 607 n.1 (V.I. 2014); *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011) (recognizing that the Legislature implicitly repealed 1 V.I.C. § 4 through its adoption of 4 V.I.C. § 21 in 2004). Moreover, after this Court issued its *Martin* decision, the American Law Institute adopted the Restatement (Third) of Restitution and Unjust Enrichment (2011), which differs from the three-factor test this Court previously endorsed.

■ Rather than blindly following our *Martin* decision, we shall consider "three non-dispositive factors" to determine the appropriate elements for an unjust enrichment claim under Virgin Islands common law: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 680-81 (V.I. 2012)). Because this Court in *Martin* adopted the three-element test discussed above, the focus of our analysis is whether the remaining two factors justify "disrupt[ing] the state of the law in the Virgin Islands" by modifying that test. *Banks*, 55 V.I. at 981.

■ As to the second factor, the three elements adopted in *Martin* are the same elements that various jurisdictions follow including Colorado,

Connecticut, Georgia, Illinois, Iowa, Kansas, Michigan, New Mexico, New York, Pennsylvania, and Washington. *Appendix: Unjust Enrichment Cause of Action by State*, 54 S. Tex. L. Rev. 265, 267-68 (2012) (collecting cases). Nevertheless, a clear majority of states have also adopted a fourth element — that the defendant has "appreciated the benefit" and "had knowledge or awareness that it was, in fact, receiving a benefit." *Id.* at 265-66. Moreover, a minority of jurisdictions also follow a position endorsed by the Restatement (Third) of Restitution and Unjust Enrichment, which has taken the position that no strict formula or test for unjust enrichment should exist, but that courts should simply be guided by the principle that "[a] person who is unjustly enriched at the expense of another is subject to liability in restitution."[9] Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011). According to the authors of the Restatement, "[t]he attempt to make the list [of categories of liability] comprehensive cannot make it exclusive: cases may arise that fall outside every pattern of unjust enrichment except the rule of" section 1. *Id.* at § 1 cmt. a. Nevertheless, the Restatement proceeds to set forth five chapters and forty-four sections addressing particular liability issues. Notably, the United States Court of Appeals for the Third Circuit and the District Court, in recent cases adjudicated pursuant to their diversity jurisdiction, have predicted[10] that this Court would adopt section 1 of the Third Restatement.[11] *Addie v. Kjaer*, 737 F.3d 854, 865 n.5 (3d Cir. 2013);

---

[9] The jurisdictions that follow this approach include Arkansas, Georgia, Hawaii, Kentucky, Massachusetts, Minnesota, Mississippi, Montana, Oklahoma, Vermont, Washington, and West Virginia. *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 n.16 (E.D. Pa. 2007), *vacated on other grounds by* 328 Fed. Appx. 121 (3d Cir. 2009).

[10] "[W]hen exercising jurisdiction over cases requiring the application of Virgin Islands law," federal courts are "required to predict how the Supreme Court of the Virgin Islands would decide an issue of territorial law." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362 n.3, 49 V.I. 1133 (3d Cir. 2007). Such predictions by the Third Circuit and the District Court, however, are not binding on either this Court or the Superior Court. *Najawicz v. People*, 58 V.I. 315, 328-29 (V.I. 2013).

[11] In *Walters v. Parrott*, 58 V.I. 391, 404 (V.I. 2013), this Court quoted section 28 of the Third Restatement — which addresses equitable distribution of property by unmarried cohabitants — in providing an example of the Superior Court's jurisdiction over equitable actions. This citation to the Restatement was not necessary to the result in that case, and therefore was merely dictum. *See Lander v. Schundler*, 168 F.3d 92, 98 n.6 (3d Cir. 1999) ("we have repeatedly held that dicta are not binding"). Furthermore, we recognize that in *Walters* this Court cited 1 V.I.C. § 4 as authority despite its repeal. *See Banks*, 55 V.I. at 974-80 (recognizing that the statute vesting this Court with the "supreme judicial power" of the Territory

*Hall v. Hall*, Civ. No. 2011-54, 2013 U.S. Dist. LEXIS 112879, \*20 (D.V.I. Aug. 9, 2013) (unpublished).

█ Turning to the third, and most important, factor — ascertaining the soundest rule for the Virgin Islands — we first reject the minority approach endorsed by section 1 of the Third Restatement. Although the authors of the Third Restatement maintain that setting forth specific elements for an unjust enrichment cause of action is "not helpful" and "can lead to serious errors" because "[t]hey lend a specious precision to an analysis that may be simple or complicated but which at any rate is not susceptible of this form of statement," RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 cmt. d, this section discounts the costs associated with an *ad hoc* case-by-case approach and the benefits of uniform and predictable outcomes. Tort law serves two fundamental purposes: "deterrence and compensation." *Dickhoff v. Green*, 836 N.W.2d 321, 336 (Minn. 2013); *Jackson v. Chandler*, 204 Ariz. 135, 61 P.3d 17, 19 (2003) ("[T]he basic policies underlying tort law [are] to deter wrongful conduct and compensate victims." (quoting *DeLoach v. Alfred*, 192 Ariz. 28, 960 P.2d 628, 633 (1998))); *Steigman v. Outrigger Enters., Inc.*, 126 Haw. 133, 267 P.3d 1238, 1247 (2011) ("[T]ort law seeks to prevent injury where possible by providing incentive to deter negligent acts."); *see also* Jeffrey S. Quinn, Comment, *Does Mass Product Tort Litigation Facilitate or Hinder Social Legislative Reform? A Comparative Study of Tobacco Regulation*, 9 RUTGERS J.L. & PUB. POL'Y 106, 169-70 (2012) ("The deterrent theory of tort law is rather simple: tort law threatens people with having to pay for the injuries they produce; therefore, people will alter their behavior by taking into account the interests of others in a socially desirable and less injury-producing way."). While case-by-case adjudication of unjust enrichment claims, unbound by any particular set of elements, may allow for compensation in cases that would not otherwise fit the traditional test of an unjust enrichment claim, it does nothing to further society's interest in deterrence, in that neither individuals nor the attorneys that advise them will have any way of predicting whether a particular type of conduct will result in civil liability.

---

implicitly repealed 1 V.I.C. § 4). But we recently explained that the Superior Court is not bound by this Court's "prior erroneous reliance" on 1 V.I.C. 4. *Connor*, 60 V.I. at 607 n.1 ("this Court has elected not to perpetuate its own prior erroneous reliance on 1 V.I.C. § 4, [and] the Superior Court . . . should not be foreclosed from departing from those holdings in an appropriate case").

Accordingly, we conclude that an unjust enrichment cause of action must have a concrete set of elements in order to further the deterrence purpose of tort law.

■ Nevertheless, we do conclude that the rule established in *Martin* requires modification. As noted earlier, a majority of United States jurisdictions have adopted a four-element test for unjust enrichment, consisting of the three *Martin* elements and an additional requirement that the defendant knew he or she was receiving a benefit or appreciated the benefit. The purpose of the knowledge element should be clear — the unjust enrichment tort, as its name implies, is concerned with preventing an *unjust* conferral of a benefit onto the defendant at the expense of the plaintiff. *See Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 729 N.W.2d 898, 904 (2006) ("[N]ot all enrichment is necessarily unjust in nature."). In the absence of a knowledge element, an individual could simply provide services for another, without their knowledge or consent, and then seek compensation for the value of the benefit conferred. *See, e.g., Loewen v. Grand Rapids Medical Education Partners*, No. 1:10-CV-1284, 2012 U.S. Dist. LEXIS 49476, *38 (W.D. Mich. Apr. 9, 2012) (unpublished) (no unjust enrichment when doctor exceeded 80-hour per week workload limit, when hospital did not request that doctor work extra hours and no evidence that doctor could expect additional compensation for excess work); *Hughes v. Monnahan*, 282 Minn. 407, 165 N.W.2d 231, 233 (1969) (no unjust enrichment when dwelling owner was unaware that dwelling occupants had contracted to remodel unit and failed to pay); *Absher Constr. Corp. v. Collin*, 233 A.D.2d 279, 649 N.Y.S.2d 174, 175 (1996) (no quantum meruit damages when construction corporation performed services with no expectation of compensation). Thus, we reformulate the elements of the unjust enrichment cause of action to require the plaintiff to prove (1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit,[12] and (4) that the circumstances were such that in equity or good

---

[12] We acknowledge that, even amongst the majority of jurisdictions, "[t]he necessary level of awareness varies from jurisdiction to jurisdiction." *Powers*, 245 F.R.D. at 231. On one extreme, "the defendant must have engaged in fraud, coercion, or other intentional conduct to induce the benefit." *Id.* However, at the other extreme, "a defendant's mere awareness of receipt of a benefit at the plaintiff's expense will suffice." *Id.* Since Aubrey failed to produce

conscience the defendant should return the money or property to the plaintiff.

■ Applying this reformulated test, we conclude that Aubrey failed to meet his burden. Unquestionably, Aubrey's labor resulted in improvements to the property that enriched Elvira, and caused him to incur expenses, both for the actual costs of supplies and the opportunity cost of his labor. However, even if we were, as a result of Elvira's failure to respond, to accept as true all of the factual allegations in Aubrey's summary judgment motion,[13] *see* FED. R. CIV. P. 56(e)(2) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion."), neither the undisputed statement of facts nor any record evidence establishes that Elvira ever requested that Aubrey perform these services, or that Aubrey had ever even broached the question of compensation or reimbursement with Elvira — who at the time was still his wife — during the pertinent time period. Consequently, since the finder of fact could — and ultimately did — conclude that Aubrey performed these services gratuitously without any expectation of payment, the Superior Court correctly denied summary judgment on the unjust enrichment or quantum meruit claim. *See, e.g., Loewen*, 2012 U.S.

---

any evidence that Elvira was aware that he intended to make the improvements to the property, we need not resolve the extent of the knowledge requirement as part of this appeal.

[13] The undisputed facts that Aubrey set forth in his summary judgment motion are as follows:

1. A warranty deed dated May 21, 2002 between Garvin A. Hodge of P.O. Box 1177, Cruz Bay, St. John, Virgin Islands and Dina Alford in the amount of $30,000 transferred property known as Parcel No. 10-6d-1 Estate Glucksburg, St. John. The transfer was secured by a mortgage from Banco Popular dated October 22, 2002 in the sum of $22,803.00. (Exhibit 7)

2. The photographs attached hereto as Exhibits 1 to 6 inclusive show that there is a building structure located at Parcel No. 10-6d-1 Estate Glucksburg, St. John.

3. The affidavit of Plaintiff establishes that said building was constructed with his labor and materials in the sum of $23,000.

4. The affidavit also establishes that defendant has never paid plaintiff for the labor or materials.

5. Public records clearly show that defendant transferred the property to Garvin Hodge without consideration.

6. Garvin Hodge is the adult son of Defendant.

7. Public records show that defendant owns Parcel 14-105 Frenchman's Bay, St. Thomas. The records also show that she claims to be a New York resident. (Exhibit 8)

(J.A. 54-55.)

Dist. LEXIS 49476 at *38; *Hughes*, 165 N.W.2d at 233; *Absher Constr. Corp.*, 649 N.Y.S.2d at 175.

## 2. *Fraudulent Conveyance*

 In his summary judgment motion, Aubrey also argued that Elvira fraudulently conveyed the property to Hodge. Under Virgin Islands law, as it existed at the time Elvira transferred whatever interests she had in the Glucksburg property to Hodge, "[e]very conveyance made and every obligation incurred with actual intent as distinguished from intent presumed by law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." 28 V.I.C. § 207.[14] Where there is such a fraudulent conveyance, the creditor may maintain an action to have the transfer set aside. 5 V.I.C. § 1229.

 Again, the Superior Court correctly denied Aubrey's motion for summary judgment on the fraudulent conveyance claim. First, we note that, despite asserting a fraudulent conveyance cause of action, at no point in the litigation did Aubrey ever request that the Superior Court provide the remedy authorized by section 1229: setting aside the transfer. More importantly, since a holding of fraudulent conveyance would impact Hodge's interest in the Glucksburg property, the Superior Court could not rule that Elvira fraudulently conveyed the property to Hodge until and unless Aubrey joined Hodge to the litigation as a necessary third party and provided him with a right to be heard on the matter. *See Harvey v. Christopher*, 55 V.I. 565, 574 n.6 (V.I. 2011) (explaining that the Superior Court may not affect the property rights of a third individual who is not a party to the underlying action). In any case, as explained above in the discussion of unjust enrichment, the record contains no evidence that Aubrey was Elvira's creditor, given that Aubrey failed to establish that Elvira was required to compensate or reimburse him for the services he performed. Furthermore, the fact that Elvira transferred the property to Hodge without consideration does not, without more, conclusively establish intent to defraud Aubrey — who prior to the transfer had never

---

[14] In November 2011, the Legislature repealed chapter 9 of title 28 of the Virgin Islands Code — including section 207 — and replaced it with the Uniform Fraudulent Transfers Act. *See* Act No. 7322, § 1 (V.I. Reg. Sess. 2011). However, statutes, including the UFTA, are presumed to be applied prospectively, and not retroactively. *Davis v. Omitowojou*, 883 F.2d 1155, 1170 (3d Cir. 1989). Therefore, section 207 remains the applicable law for this case.

even demanded payment — so as to warrant the drastic remedy of summary judgment, since a rational trier of fact could infer that Elvira simply wished to provide a gift to her son. Thus, the Superior Court committed no error when it denied Aubrey's summary judgment motion.[15]

## B. The Recusal Motions

We now turn to the two motions demanding Judge Hollar's recusal, which were filed, respectively, 10 minutes before the start of the May 5, 2010 trial, and on September 9, 2010. As noted earlier, Judge Hollar never ruled on the May 5, 2010 motion, and denied the September 9, 2010 motion as moot because it was filed three months after Aubrey filed a notice of appeal with this Court. Because Aubrey does not include any legal argument in his brief challenging the denial of his September 9, 2010 motion, he has waived his right to appellate review of that decision. *See* V.I.S.Ct.R. 22(m) (issues not raised, or raised in a perfunctory manner, are waived). In any event, we agree that, by appealing the final judgment in this case on June 4, 2010, Aubrey divested the Superior Court of any jurisdiction to rule on his subsequently filed motion. *See In re Rogers*, 56 V.I. 325, 342 (V.I. 2012) ("[A]n effective notice of appeal of a final order typically divests the trial court of jurisdiction.") (citing *In re Burke*, 50 V.I. 346, 351 n.1 (V.I. 2008)). Consequently, we limit our review solely to the May 5, 2010 recusal motion.

In the Virgin Islands, section 284 of title 4 establishes the substantive standard for recusal of Superior Court judges, and it provides, in pertinent part, that "[n]o judge . . . shall sit or act as such in any action or proceeding . . . [w]hen it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot be had before

---

[15] In his appellate brief, Aubrey also asserts, without providing any legal argument or citing to supporting authority, that this Court should reverse the denial of summary judgment "because Judge Hollar's bias caused her to intentionally misinterpret the uncontroverted facts and apply the incorrect law to those facts." (Appellant's Br. 12.) As we explain in greater detail in the following section, Aubrey's claim that Judge Hollar should have been disqualified from the underlying matter is wholly without merit. However, since our review of a summary judgment decision "is *de novo* with no deference given to any of the Superior Court's findings or conclusions," our decision to affirm the denial of summary judgment would render any potential error in this regard harmless. *Martin*, 54 V.I. at 388 n.5 (citing *Hodge v. McGowan*, 50 V.I. 296, 309 (V.I. 2008)).

him." 4 V.I.C. § 284(4). "Section 286 of title 4 controls the procedure by which a complaining party may bring a motion for recusal and requires (1) that the motion be in writing and (2) that the motion be made first before the judge that the party seeks to disqualify." *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 569 (V.I. 2012) (citing 4 V.I.C. § 286).

 We question whether Aubrey complied with the procedural requirements for filing a recusal motion. While Aubrey technically complied with section 286 by making a written motion for Judge Hollar's disqualification, the act of filing it with the Superior Court Clerk's Office literally 10 minutes before trial, combined with not informing Judge Hollar at the outset of trial that a recusal motion had been filed, unquestionably frustrated the clear purpose of section 286, which is to permit a judge to pass on his or her own competency in the first instance. *Gov't of the V.I. v. Gereau*, 502 F.2d 914, 932 (3d Cir. 1974). Some appellate courts, when faced with similar abuses, have refused to entertain any claim of error, notwithstanding technical compliance with procedural rules. *See, e.g., State v. Hansen*, 42 Wn. App. 755, 714 P.2d 309, 313 (1986) (declining to review recusal issue, despite counsel's literal compliance with statute, because act of filing written request for disqualification minutes before trial constituted "a flagrant abuse of legislative intent" that if condoned "would lead to disruption of the orderly administration of justice for no legitimate reason").

 In any event, we need not determine whether Aubrey's actions should result in waiver of the recusal issue because the May 5, 2010 motion — like numerous similar motions filed by Aubrey's counsel in other cases[16] — was wholly without merit, if not frivolous. "[B]efore a

---

[16] Although not relevant to our disposition of the instant appeal, we cannot ignore the fact that Aubrey's counsel, Kenth W. Rogers, has engaged in a pattern of filing vexatious recusal motions in all Virgin Islands courts. *See, e.g., In re Disbarment of Rogers*, 60 V.I. 295, 305 n.1; *In re Rogers*, 57 V.I. 553, 560 (V.I. 2012); *In re Rogers*, 56 V.I. at 329; *Benjamin*, 56 V.I. at 569. Notably, all of these recusal motions have either been clearly filed for the purposes of delaying the underlying proceedings, or have been so lacking in merit — in some instances, even containing demonstrably provable falsehoods, such as in the matter that contributed to his disbarment — so as to rise to the level of ethical misconduct. Had this Court not recently disbarred Rogers, we might be inclined to refer his similarly outrageous conduct in this case to the Ethics and Grievance Committee of the Virgin Islands Bar Association for further disciplinary proceedings. However, in light of his disbarment, we take this opportunity to emphasize and point to Supreme Court Rules 211.3.1, 211.3.3, 211.3.5(d), and 211.8.2(a), which provide, respectively, that it is ethical misconduct for an attorney to bring

judge is required to recuse him or herself based on bias, the facts alleged by the party arguing for disqualification must 'reflect a clear probability that the judge is biased against that party.' " *Benjamin*, 56 V.I. at 569 (quoting *Gereau*, 502 F.2d at 932). In his May 5, 2010 motion, Aubrey simply made a naked claim that Judge Hollar is biased, supported solely by unsubstantiated allegations that (1) Judge Hollar and Judge Thomas share common religious activities, and (2) Judge Thomas had not set a trial date in the divorce action pending in the Family Division. In other words, Aubrey provided "*no facts* that would permit us to draw any inference that the trial judge was biased or prejudiced in any way," and premised his request for disqualification on nothing but "broad and completely unexplained assertions [that] fall well below the 'clear probability' standard." *Id.* (emphasis in original) (quoting *Gereau*, 502 F.2d at 932). Therefore, we hold that Judge Hollar committed no error by presiding over the May 5, 2010 trial and issuing the May 7, 2010 Order dismissing Aubrey's complaint with prejudice.

## IV. CONCLUSION

Because we find no error with the Superior Court's denial of Aubrey's motions for summary judgment and recusal, and Aubrey has failed to challenge the dismissal of his claims after trial on appeal, we affirm the May 7, 2010 Order.

## CONCURRING OPINION

SWAN, *Associate Justice*, concurring. Aubrey Walters appeals the Order of the trial court dismissing with prejudice his action for debt against his' former spouse, Elvira Walters, because of insufficient evidence. Aubrey's counsel, Kenth Rogers,[1] asserts that the trial judge's dismissal was

---

frivolous claims, to knowingly make false statements of fact to a tribunal, to engage in activities designed to disrupt a tribunal, and to knowingly make false statements concerning the integrity of a judge.

[1] Attorney Rogers was a licensed attorney in the Territory at the time the Notice of Appeal was filed in this case. However, Attorney Rogers' license to practice law in the Territory has since been suspended. *See In re Suspension of Rogers*, S. C.t. Civ. No .2012-0059, 2012 V.I. Supreme LEXIS 79, *20 (V.I. Oct. 26, 2012) (unpublished) (ordering, *inter alia*, suspension from practice of law for 6 months, effective 15 days from October 26, 2012). The suspension continued in 2013 until Attorney Rogers was disbarred effective December 12, 2013. *See In re of Disbarment of Rogers*, 60 V.I. at 312 (V.I., 2013).

prompted by biases she held against Rogers. While he did not move for recusal in a timely fashion, Rogers further asserts after dismissal of the case that the trial judge should have recused herself, and that summary judgment in Aubrey's action for debt should have been granted. I join in the Court's judgment affirming the Order of the trial court. Because I find that the trial court's Order should be affirmed solely on the bases that Aubrey's claims are vague, meritless, and unsubstantiated and that Aubrey's Motions to Disqualify were untimely, in addition to meritless, I write separately.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts I deduce from Aubrey's claim, from the scant record before us for review, and from the convoluted arguments presented in the Appellant's brief are as follows: Aubrey and Elvira Walters were married in 1993, but separated sometime in 2002. (J.A. at 58.) Although separated, Aubrey continued to provide some support to Elvira. In 2002, Aubrey was under the impression that Elvira had purchased land in Estate Glucksberg, St. John. Aubrey and Elvira agreed that Aubrey would have no interest in the land because of his tax difficulties and his failed businesses. (*Id.* at 59.) Aubrey gave Elvira approximately $3000 as a contribution toward the purchase price for the property. (*Id.*) After its purchase, Aubrey cleared the Estate Glucksberg property and constructed a wooden residence for Elvira's benefit. Aubrey never requested payment or reimbursement for these services. Later, Aubrey discovered that the property was not legally titled to Elvira, but was titled to her adult son, Gavin Hodge, by another individual. According to Aubrey, he was unaware that he was rendering services and labor for the benefit of Hodge, and not for the benefit of Elvira.

On May 4, 2006, Aubrey's counsel, Kenth Rogers, filed a complaint against Elvira alleging failure to reimburse for services Aubrey rendered on the property. (J.A. at 4.) Importantly, Aubrey never alleged fraud, unjust enrichment, or entitlement to a constructive trust in his complaint, but rather filed an action for debt anchored in a breach of contract claim. On November 15, 2006, Aubrey filed a Motion for Summary Judgment, with no evidence before the trial court other than affidavits by Aubrey dated September 5 and 14, 2006. (J.A. at 7.) The Motion for Summary Judgment was unopposed, although Elvira appeared in court when it was eventually heard. Three and one-half years after it was filed, on March 18,

2010, the trial court held a hearing on the Motion for Summary Judgment. At the conclusion of the hearing, the trial court denied Aubrey's Motion for Summary Judgment, reasoning that there were too many unanswered questions of fact concerning the purported creation of a contract between Elvira and Aubrey. (J.A. at 11, 43.)

Significantly, while this contract proceeding was ongoing, divorce proceedings between Elvira and Aubrey were held in a separate action before Judge Audrey Thomas. (J.A. at 47.) It is unclear from the record before us when the divorce was finalized; however, Aubrey and Elvira were still legally married at the conclusion of the previously described breach of contract case. Apparently, the divorce proceedings were contentious and involved the filing of a domestic violence action against Aubrey. (*Id.*) Aubrey claims that the acrimony between the parties continued with Aubrey filing a police report for embezzlement and forgery against Elvira. (Appellant's Br. at 11.)

On May 5, 2010 a bench trial in the contract-debt action was held before Judge Brenda Hollar, commencing at 9:12 a.m. A mere ten minutes before trial, at 9:02 a.m., Attorney Rogers filed a motion seeking to disqualify Judge Hollar, which was apparently delivered to her chambers during or after the trial, and which Rogers did not mention as the trial progressed. (*Id.* at 10, 51.)[2] While Aubrey testified at the 20-minute trial, no additional facts were elicited during the testimony beyond those submitted to the trial court on the summary judgment application that would provide further support for Aubrey's claim. Absolutely no evidence was offered at the trial that there ever was a discussion between the parties — much less an agreement — about any payment to be made in connection with the work Aubrey stated that he performed on the property. Nor was there any evidence adduced that Elvira knew, or should have known, that Aubrey might in the future seek reimbursement for labor or materials. As a result, the trial court dismissed Aubrey's case with prejudice for "insufficient evidence . . .establish[ing] that [a] debt is owed by his wife for the house that was built on someone else's property." (J.A. at 3, 20.) No argument in support of the Motion to Disqualify was offered by Attorney Rogers, and the trial court neither acknowledged nor addressed it during the hearing. (J.A. at 10-21.) The trial court

---

[2] No copy of this motion appears in the Joint Appendix, but it is referred to in Judge Hollar's May 7, 2010 Order.

memorialized the dismissal of the action in a May 7, 2010 Order. Rogers timely appealed the May 7 Order on the plaintiff's behalf. (J.A. at 1, 6-7.)

On September 9, 2010, approximately four months after the dismissal of the case, Attorney Rogers filed a second motion seeking to disqualify Judge Hollar. In this motion, Attorney Rogers asserts that Judge Thomas' alleged bias towards him had been transferred to Judge Hollar because of the alleged close friendship between the Judges. Attorney Rogers further asserted that this transfer of bias exists because the judges attended the same church and did joint missionary work. (J.A. at 47.) Without addressing the frivolous and meritless nature of either this motion or its predecessor, the trial court, in an Order dated September 16, 2010, denied both the May 5 and September 9, 2010 motions as being untimely and/or moot. (J.A. at 52.) Neither the docket sheets, the Joint Appendix, nor his appellate brief contains any suggestion that Attorney Rogers ever attempted to appeal the September 16, 2010 Order denying the disqualification motions. Hence, the September 16, 2010 Order is final.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A motion filed with the trial court, but not addressed in the court's order dismissing or otherwise disposing of the other claims submitted to it for adjudication, that seeks relief inconsistent with the ruling embodied in the court's order is "construe[d] . . . as having been implicitly denied." *Anthony v. Independent Ins. Advisors, Inc.*, 56 V.I. 516, 534 (V.I. 2011) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981)). In this case, the May 7, 2010 Order dismissing Aubrey's breach of contract case with prejudice grants relief inconsistent with the relief sought in the May 5, 2010 motion seeking to disqualify Judge Hollar, and disposes of all other claims submitted to the trial court for adjudication. As such, the order was a final order and is construed as implicitly denying the May 5, 2010 motion to disqualify. *Anthony*, 56 V.I. at 534; *see also Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012) (stating that a final order is one which disposes of all claims submitted for adjudication). Accordingly, we have jurisdiction over this appeal.

## III. ISSUES AND STANDARD OF REVIEW

The majority of Attorney Rogers' quasi-legal arguments concerning the dismissal of the case center on his contention that the trial judge was biased towards him. Attorney Rogers alleges that Aubrey's debt action against his ex-wife failed mainly because of the trial court's bias and prejudice towards Attorney Rogers at the summary judgment stage of the proceeding and during a bench trial. In reviewing a trial court's findings in a bench trial, we exercise plenary review over conclusions of law, and factual conclusions are reviewed for clear error. *Lopez v. People*, 60 V.I. 536, 538 (V.I. 2014); *Kosiba v. Merck & Co.*, 384 F.3d 58, 64 (3d Cir. 2004). We review a trial court's denial of a motion for recusal for abuse of discretion. *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). Similarly, whether a trial judge gave the appearance of partiality or bias at trial involves a review to determine whether the judge abused his or her discretion. *Quinlan v. City of Pensacola*, 449 Fed. Appx. 867, 869 (11th Cir. 2011) (citing *United States v. Verbitskaya*, 406 F.3d 1324, 1337 (11th Cir.2005)).

This Court reviews *de novo* a trial court's grant of summary judgment. *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 263 (V.I. 2012); *Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 127 (V.I. 2009); *Peter Bay Homeowners Ass'n, Inc. v. Stillman*, 294 F.3d 524, 532 (3d Cir. 2002). The Court also applies a *de novo* standard when reviewing on appeal the trial court's denial of summary judgment, as in this case. *See, e.g., G&S Livingston Realty, Inc. v. CVS Pharm., Inc.*, 506 Fed. Appx. 182, 184 (3rd Cir. 2012); *Pacific Emplrs. Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 425 (3rd Cir. 2012).

## IV. DISCUSSION

### A. The Motions to Disqualify were untimely and failed to establish that there was judicial bias resulting in an unfair trial.

Aubrey filed two Motions to Disqualify, one 10 minutes prior to trial, and another after the case was dismissed. Aubrey asserts in the second Motion for Disqualification that the action for debt failed mainly because of Judge Hollar's bias towards Attorney Rogers. In his Motion for Disqualification, Aubrey claimed that Judge Thomas harbored some bias towards Attorney Rogers arising from the divorce proceedings between

Aubrey and Elvira over which Judge Thomas presided. Aubrey further claimed that Judge Hollar's alleged close relationship with Judge Thomas compromised Judge Hollar's impartiality and ability to fairly preside over Aubrey's debt action.[3] Both of these Motions were not timely filed and are thus waived, and — on the merits — do not establish grounds for recusal or disqualification of a judge under the governing Virgin Islands statute. Recusal in the Virgin Islands is controlled by 4 V.I.C. § 284. *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 569 (V.I. 2012).

Section 284 states in pertinent part that "[n]o judge or justice shall sit or act as such in any action or proceeding . . . [w]hen it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot be had before him." Section 286 of title 4 controls the procedure by which a complaining party may bring a motion for recusal and requires (1) that the motion be in writing and (2) that the motion be made first before the judge that the party seeks to disqualify. *Benjamin*, 56 V.I. at 569. *See also Gov't of the V.I. v. Gereau*, 502 F.2d 914, 931-32 (3d Cir. 1974) ("Section 286 states that challenges to the competency of a judge are permissible only when his disqualification is clear, and provides that the objecting party in such case may file his written objection with the judge, who is allowed to pass on his own competency, subject only to review on appeal after final judgment.").

While all motions to disqualify should be considered on the merits, the court should be given reasonable time in which to consider them. As the trial court noted in its order dismissing the Motions to Disqualify,

> [a]t no time was any motion to disqualify the undersigned mentioned during trial and the matter was received in my chambers either *during* or *after* the trial. Counsel for Plaintiff knew or had reason to believe that the [trial court] would not receive a motion filed in the Clerk's Office ten (10) minutes before the trial began.

(J.A. at 51) (emphasis in original). Obviously, this motion to recuse was surreptitiously filed and was calculated to disrupt the trial. No information in this motion constitutes newly discovered evidence. Section 286 clearly contemplates that a motion to disqualify a judge be filed before the pro-

---

[3] Although the first Motion for Disqualification was not included in the record before this Court, the record demonstrates that similar allegations were made in this Motion.

ceedings, since it provides that upon a proper written challenge the judge shall withdraw or "proceed with the trial." 4 V.I.C. § 286. In this case, however, the motion was not timely filed (the motion was delivered to the judge's chambers either during or after the trial, and was not raised by Rogers during the trial). Moreover, a motion filed 10 minutes before the scheduled commencement of trial, which is lacking in factual or legal support, does not satisfy this statutory provision.

Timeliness is an essential element of motions for disqualification. *United States v. Whorley*, 550 F.3d 326, 339 (4th Cir. 2008). Motions to recuse or disqualify should be timely made as soon as all facts demonstrating the basis for disqualification become known to the moving party. *Id.*; *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 653 (8th Cir. 2008); J.H. Cooper, Annotation, *Time for Asserting Disqualification of Judge, and Waiver of Disqualification*, 73 A.L.R.2d 1238 (1960) (collecting cases).

I believe it will establish a disconcerting precedent to allow a party litigant to surreptitiously file a motion for recusal immediately prior to trial on the day of the trial, when there is a great possibility the judge will not have an opportunity to review it, especially when the basis for the motion was not something discovered overnight. "[T]he evil that a timeliness requirement is intended to prevent — namely, holding in reserve a recusal demand until such time that a party perceives a strategic advantage — is served by requiring actual knowledge." *United States v. Vampire Nation*, 451 F.3d 189, 208 (3d Cir. 2006) (internal quotation marks omitted). The knowledge of the alleged relationship between the two trial judges — that they attend the same church — is undoubtedly a fact that would have been known well in advance of the trial.

The second Motion for Disqualification was even more egregiously untimely than the first. The bench trial in this case was held on May 5, 2010, and the Order dismissing the case is dated May 6, 2010. The Notice of Appeal to this court is dated June 3, 2010 and was filed on June 4, 2010. (J.A. at 1, 6-7.) Attorney Rogers filed his second Motion for Disqualification on September 9, 2010, approximately four months after he had filed the initial motion for disqualification and four months after the case had been adjudicated by the trial court, and more than three months after the filing of the Notice of Appeal in this case. Aubrey has not offered any good cause or reason for the delay in filing the second motion for recusal. Importantly, the claims of bias or prejudicial conduct alleged

by Aubrey do not appear to have emanated from newly discovered evidence that could have warranted excusing the untimeliness of the disqualification applications. *See United States v. Rosenberg*, 806 F.2d 1169, 1173 n.3 (3d Cir. 1986) ("[a] disqualification motion filed after trial and judgment is usually considered untimely unless good cause can be shown for the delay, for otherwise a party alleging bias would always await judgment in the hopes of a favorable decision").

In addition, an untimely motion for disqualification must meet a heightened standard in showing bias. *See Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 237 (3d Cir. 2001) ("[T]here must be a more compelling standard for recusal [] after the conclusion of a trial than before its inception"). Consequently, because the Motion for Disqualification was made well after the conclusion of the proceedings in the trial court, and no newly discovered evidence or other cognizable reason for delay was presented, the issue of judicial bias is waived. *See Benjamin*, 56 V.I. at 569. Therefore, the trial court's Order denying the Motions for Disqualification as untimely was proper.

In addition to being outrageously untimely, the Motions to Disqualify fail dismally on the merits. Construing the Virgin Islands statute, the Third Circuit has stated that before a judge is required to recuse himself or herself based on bias, the facts alleged by the party arguing for disqualification must "reflect a clear probability that the judge is biased against that party." *Gereau*, 502 F.2d at 932. A judge should no longer preside when a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *United States. v. Bergrin*, 682 F.3d 261, 282 (3d Cir. 2012). *See generally Caperton v. A.T. Massey Coal, Co.*, 556 U.S. 868, 877, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009).

Even if Attorney Rogers had not waived the issue of judicial bias, he has articulated no cogent reason requiring the Judge's recusal.[4] It is noteworthy that Rogers never asserted in either motion that Judge Hollar has a pecuniary or proprietary interest in the case or any personal interest

---

[4] It is not clear from his Motion, which Judge Aubrey wants recused. The Motion is titled "Motion for Disqualification of Judge Brenda Hollar," however, in the last sentence of the Motion Aubrey states "Judge Thomas should recuse herself from further action in this case." (J.A. at 48.) In any case, Aubrey has not demonstrated a valid basis for the recusal of either Judge.

in the outcome of the case. Further, Rogers never explicated how Judge Hollar violated, if at all, the Virgin Islands Model Code of Judicial Conduct. According to Attorney Rogers, judicial prejudice can be demonstrated by Judge Thomas' refusal to set a trial date based upon *ex parte* communications between the trial court and Elvira and based upon Judge Thomas' refusal to permit amendment of the divorce complaint. (J.A. at 47 and Appellant's Br. at 11.) Attorney Rogers further asserts that Judge Thomas would have held Aubrey liable for domestic violence had it not been for a police report filed against Elvira for embezzlement and forgery. (Appellant's Br. at 11.) Attorney Rogers claims that Judge Thomas' prejudice towards him in the divorce case should be imputed to Judge Hollar in this case because the two Judges are allegedly close friends, members of the same church, and do missionary work together. (J.A. at 47.)

The trial court did not abuse its discretion in failing to find partiality or bias based on these unsubstantiated facts alone. Firstly, Attorney Rogers emphasizes the alleged circumstances surrounding the divorce proceedings in an effort to substantiate his claims of judicial bias. However, a party seeking to compel recusal of a judge must aver an extra-judicial source of bias not based upon rulings in pending cases before other judges. *United States v. Ciavarella*, 716 F.3d 705, 720 (3d Cir. 2013) (to require recusal or reassignment of a judge, "a case generally must involve apparent bias deriving from an extrajudicial source, meaning something above and beyond judicial rulings or opinions formed in presiding over the case").

Moreover, Attorney Rogers does not include in the record before us any transcripts, orders, or any other documentation from Aubrey and Elvira's divorce proceedings before Judge Thomas that would confirm his claims that Judge Thomas' actions during those proceedings amounted to impermissible bias towards him or Aubrey.[5] Without any evidence clarifying what transpired during the divorce proceedings, it remains highly obfuscated as to what significance an *ex parte* communication, a domestic violence charge, or a police report has to do with any perceived bias Judge Thomas might have harbored towards Attorney Rogers that

---

[5] The rules of this Court clearly mandate that all assertions of facts in the brief must be supported by a specific reference to the record. V.I.S.CT.R. 22(d).

could subsequently have been transferred or be imputed to Judge Hollar in this case.

Even if Attorney Rogers had managed to demonstrate that Judge Thomas was in some manner biased towards him during Aubrey's divorce proceedings, he presented nothing substantial to support a rational inference that Judge Thomas' alleged bias was somehow transferred or imputed to Judge Hollar. Firstly, no evidence exists in the record, aside from Attorney Rogers' naked assertions, which suggests that the two judges have a close relationship outside of the Superior Court. Secondly, even if the accusations were true, a reasonable person would not and could not infer prejudice in this situation merely because the two judges purportedly attend the same church and do missionary work together. The law assumes judicial impartiality. *See United States v. Oaks*, 606 F.3d 530, 537 (8th Cir. 2010) ("A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise") (internal citation omitted). Therefore, a party claiming judicial bias has a heavy burden. Accordingly, Attorney Rogers was required to present much more than general, unsupported, conclusory allegations in order to establish improper judicial bias. *See Hill v. Carpenter*, 323 Fed. Appx. 167, 170 (3d Cir. 2009)(a recusal motion consisting of "disrespectful language and scathing, conclusory allegations" was insufficient to require recusal of the judge) (citing *United States v. Vespe*, 868 F.2d 1328, 1340 (3d Cir. 1989) ("[c]onclusory statements and opinions" made by a litigant in his 28 U.S.C. § 144 affidavit "need not be credited")).

Accordingly, the trial court's denial of the Motions for Disqualification was proper because the allegations in the motions failed to support a claim of bias as well as any perceived or alleged bias that could have been imputed or transferred from one judge to another judge in a different case. Attorney Rogers' claims are utterly without merit.

## B. The trial court's denial of summary judgment was proper.

In his complaint initiating the action for debt, Aubrey claimed that Elvira is indebted to him for labor and materials Aubrey supplied in the construction of a residence on the Estate Glucksberg property by virtue of an implied contract and fraudulent conveyance. Aubrey asserts on appeal that this claim was incorrectly dismissed by the trial court and that he

should have been granted relief at the summary judgment stage. His contention is that his Motion for Summary Judgment was not granted because "Judge Hollar intentionally misapplied of [sic] the relevant facts to the law" due to her purported bias. (Appellant's Br. at 8.)

Generally, summary judgment should be granted after an adequate period for discovery[6] has passed if the record reflects that: (1) there are no genuine issues, (2) as to any material fact, and (3) the moving party is entitled to judgment as a matter of law. *Burd v. Antilles Yachting Servs.*, 57 V.I. 354, 358 (V.I. 2012) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194-95 (V.I. 2008)); *see also Beard v. Banks*, 548 U.S. 521, 529, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The court must credit all reasonable inferences from the evidence on record in favor of the nonmoving party in considering whether there are any disputed issues of material fact. *Burd*, 57 V.I. at 358; *Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011).

As the trial court noted during the March 18, 2010 summary judgment hearing, there still remained many unanswered questions of facts surrounding the terms of the purported contractual agreement for the services rendered by Aubrey to Elvira, or whether such a contractual agreement ever existed. At the hearing the trial court noted that:

> there are questions of fact as to whether a Contract was consummated, whether there was ever a meeting of the minds and what was the meeting[] of the mind[s] and when.

(J.A. at 33.)

As the party moving for summary judgment, Aubrey had the burden of demonstrating a clear absence of genuine issues of material fact. *Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008). Because Elvira was Aubrey's lawful spouse at the time of the construction of the house, there is a strong presumption that the services rendered and construction materials supplied were a contribution providing for Elvira's support, maintenance, and well-being, for which compensation was not expected.

---

[6] Here, of course, the motion was filed only four months after the case was commenced, and no record of discovery is present.

*See* 16 V.I.C. § 342(a)(1).[7] Aubrey submitted no proof to the trial court to rebut this presumption, or to meet his burden of establishing a clear absence of genuine issue of material fact in this case. In the record before the trial court, there was no testimony that the parties agreed that Aubrey would be reimbursed for the expenses for building Elvira's residence on the St. John property. Also, no evidence exists that Aubrey expected to be reimbursed for his services prior to the disagreement with Elvira, concerning who is the actual owner of the property. Importantly, there was no evidence of a written or oral contract between Aubrey and Elvira embodying the alleged agreement to provide reimbursement to Aubrey for his labor and the cost of the building material for Elvira's residence.

Aubrey's burden as the summary judgment movant was not relieved by the fact that the Motion was unopposed. Although Rule 56(e)(2) of the Federal Rules of Civil Procedure allows the trial court to consider the facts of the case undisputed if the opposing party fails to respond to such a motion, summary judgment may not be automatically granted by default for failure to properly respond. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69 (11th Cir. 2008); *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[T]he failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law."). Thus, as Rule 56 was worded in both 2006 and early 2010, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322. Therefore, where the moving party bears the burden of proof at trial, as Aubrey did in the present case, "the burden [is on] the moving party . . . to show initially the absence of a genuine issue concerning any material fact." *Id.* at 323, 325 (construing the language in Rule 56(c) as it was worded during the lawsuit between Aubrey and Elvira and up to

---

[7] 16 V.I.C § 342. Persons obligated to support

 (a) The following are obliged to support each other —

 (1) husband and wife[.]

December 1, 2010, stressing that it is the movant's burden to present affidavits and other materials "that the moving party is entitled to a judgment as a matter of law" before the obligation falls on the nonmovant to present contrary evidence). *See also* FED. R. CIV. P. 56(e) advisory committee note to 2010 amendments.

The trial court must accept as true the facts stated in an unopposed motion for summary judgment. *Halliday v. Footlocker Specialty, Inc.*, 53 V.I. 505, 512 n.11 (V.I. 2010). Nonetheless, a summary judgment movant must still establish that he is entitled to judgment as a matter of law. Even when accepting all of Aubrey's factual statements as true as a result of Elvira's failure to respond, Aubrey has failed to establish a contract, an implied contract, or a fraudulent conveyance. Based on the lack of evidence presented to the trial court at the time of the summary judgment hearing, Aubrey failed to meet his burden, and the denial of summary judgment was proper.

## C. The trial court's dismissal of the case after trial was proper.

After his Motion for Summary Judgment was denied, Aubrey had an opportunity to engage in discovery and to complete preparations so that he could present more evidentiary support to the trial court on the merits of his claim of entitlement to reimbursement from his wife. He failed to conduct discovery. Instead, when the trial was held, four years after the case was filed, he relied on the same cursory factual statements presented to support the motion for summary judgment — indeed Aubrey's recollection at trial was more vague and incomplete than even the conclusory affidavits submitted in 2006. Thus, at trial Aubrey again failed to carry the established burden of a plaintiff to present at least prima facie evidence supporting the claim that there was a contractual agreement between Elvira and himself for reimbursement for the services he performed. For example, Aubrey testified as follows:

> Q. Did you, at any time, request that Ms. Elvira Walters pay you for the work that you did at Estate Glucksberg?
> A. No, I did not.

(J.A. 16).

Aubrey's case failed to offer evidence permitting the trier of fact to find even the most basic prerequisite for the formation of a contract: that there

was a mutual assent to a bargained-for-exchange in which one party made a promise in return for another promise. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 18-23 (1981). For instance, the most glaring indication of a lack of contractual agreement in this case is Aubrey's testimony that he never requested that Elvira pay him for the work he performed on the Estate Glucksberg property. (J.A. at 16, 60.)

The few facts that can reasonably be inferred from the scant record before us are that there was never a mutual assent to a bargained-for agreement in regards to the improvement of the Estate Glucksberg property, and that Aubrey only later demanded payment after he discovered that the property was titled to Elvira's son and not to Elvira. It is also unclear what the rightful ownership of the Estate Glucksberg property has to do with the alleged contractual agreement, and whether Aubrey would have had any cognizable claim relating to alleged "misrepresentation" of property ownership. The facts are vague regarding whether Elvira was still the primary occupant of the Estate Glucksberg property although the title to the property was in her son's name. As noted above, however, as pled in this case there was no allegation that Elvira and Hodge conspired to misrepresent the fact that she owned and occupied the property for the sole purpose of deceiving Aubrey into improving the land,[8] and no claim for fraudulent misrepresentation was alleged.

Additionally, Aubrey has not pled a claim for relief under an unjust enrichment or any other equitable theory, or any other equitable grounds,[9] nor is fraud or misrepresentation pled. The complaint is titled, "Action for Debt." (J.A. 4.) At the argument on summary judgment, Attorney Rogers told the trial court that the case was "an action for debt" (J.A. 25), and in summation at trial reiterated that "[t]his action is for debt." (J.A. 19). The

---

[8] Although Aubrey places much emphasis on the rightful ownership of the Estate Glucksberg property in his claims against Elvira, at the time of the bench trial there was no evidence submitted to the trial court regarding who held title to the property. (J.A. at 30.) This lack of evidence, such as a deed, further served to undermine Aubrey's fraud allegations made on appeal.

[9] Rather, the complaint merely pled a debt action allegedly arising from a breach of contract claim. It would appear that the issue of fraud was not raised, considered, or competently articulated to the trial court, because the court questioned Aubrey at length concerning the nature of any agreement between Aubrey and Elvira for reimbursement, rather than any claimed fraudulent conduct of the parties. This implies that the trial court also treated this matter as a breach of contract claim rather than a claim of fraud.

notice of appeal filed by Rogers is captioned, "Action for Debt." (J.A. 1.) Not only are the factual circumstances surrounding the fraud allegations belatedly asserted on appeal highly ambiguous, but also the evidence proffered by Aubrey was decidedly insufficient to establish what relief, if any, he could have been entitled to receive even if such a claim had properly been pled before the trial court. Aubrey seems to assume that the only thing needed for a court to grant him relief are motions containing scurrilous and spurious allegations, and that no further evidence of substance need be submitted to support any legal or factual claims. Aubrey failed to plead any other causes of action, and offered nothing for the trial court's consideration concerning the value of the services rendered and the materials supplied. There was no evidence offered in the trial court that would allow a trier of fact to make a rational conclusion, based upon a preponderance of the evidence, concerning the costs of labor or construction material such as credit card bills, receipts for the purchase of building materials, or affidavits from other individuals who worked on the property or witnessed Aubrey working on the property.[10] As the trial court observed, not even Aubrey's own testimony was forthcoming about the value of his labor and material costs. At the bench trial, the trial court noted that:

> There's no deed that has been placed into evidence. When asked about the value of his labor, [Aubrey] says he doesn't know. There's been no figure that has been testified to. Given the foregoing, the Court finds that there's insufficient evidence to establish that the debt is owed by his wife for the house built on someone else's property.

(J.A. at 20-21.) Accordingly, Aubrey failed to carry the applicable burden of proof to establish the elements of his claim, and the trial court's dismissal of the case after the trial was proper.

---

[10] Included in the record on appeal is an invoice dated June 8, 2006, from Aubrey billed to Elvira with a breakdown of the costs of materials and services totaling $23,400. (J.A. at 62.) This invoice, however, is not a supplier's invoice which shows the actual cost of supplies. Further, it is not clear whether this invoice was a part of the record before the trial court, especially in light of the trial court's statements that there was no testimony or evidence regarding the value of labor or materials and Aubrey's own statements that he never requested payment from Elvira for any of the services. The transcript does not reflect that any such material was offered at trial.

## V. CONCLUSION

In consideration of the foregoing, the May 7, 2010 Order of the trial court should be AFFIRMED.